SOMMERVILLE, J.
Plaintiff, the mother of Clifton B. Ryan, aged about four years, sues the defendant company in damages for negligently running over said minor’s right arm, and breaking and mangling it to such an extent that it had to be amputated above the elbow. She asked for $26,000 damages.
Defendant denied negligence and responsibility, and claimed that the accident was unavoidable.
There was judgment in favor of the plaintiff in the sum of $12,000, • and defendant has appealed.
It was shown on the trial that on May 31, 1917, about 4:30 o’clock p. m., a train belonging to the defendant company was operated by it on its tracks in the city of Baton Rouge. The train came from the Standard Oil plant above the city, and was constituted of an engine and four tank cars and two coal cars ahead of the engine, and five shuttle, or passenger, cars behind the engine, the engine being nearly in the center of the train; that is, the coal and tank cars were being 'pushed by the engine, while the shuttle cars, or passenger coaches, were being drawn thereby, and, while going south, along its track in Union street, and across Main street, the principal street of the town, Clifton was knocked down and his right arm was crushed and broken, while he was attempting to cross the tracks of the company at the public crossing in Main street.
[1] It may not be negligence per se for a train to be operated in the manner just indicated, through the streets of a populous city; but, when the same is done, every possible precaution should be taken to avoid accidents.
[2] In this case, the child cannot be held for contributory negligence.
The evidence shows that the train was not properly equipped and managed. It further shows, if it had been properly managed, that the accident would have been avoided.
The child, Clifton, together with another child, aged about six years, according to the *43 street crossing .flagman at that corner, witness for defendant, had been racing up and down the square for an hour or more on their tricycles. He, the flagman, had seen them all of that time; but when the train approached, and it was his duty to see that the way was clear, he appears to have disregarded the children, and he took no notice of their movements until it was too late to avoid the accident. When this witness was pressed as to why he did not signal the train to stop, or to attempt sooner to rescue the children, he replied that he thought they had more sense than to come on the track.
The evidence shows that this street flagman was an epileptic, to the knowledge of defendant’s agents, and that he was not a competent person to have been in -charge of the crossing. The attending physician of this flagman was asked:
“Q. Well, take an epileptic in^the stage that Mr. Powers was in at the time you treated him, what would be his probable course of action if he was suddenly confronted with an emergency that required quick thought and quick action? A. He would be most apt to do nothing. Q. His tendency would be to do nothing? A. Tes; because he has not the mental ability to think and act quickly.”
[3] And the flagman in this instance did nothing, and defendant was at fault in having him, or permitting him, to occupy the position of flagman at an important crossing in a city.
Powers, the flagman, testified that, while he saw the children racing on the sidewalk, at the time of the accident, they (the children) were going in an opposite direction, and that he did not actually see the child Clifton until the latter was within 10 feet of the train; that at that time he flagged the engineer, and that he attempted to cross the track in front of the train and save the child, but that he was too late to do so.
The witness may have flagged the engineer, but not until after the fireman, who was on the engine, in the middle of the train, had discovered that an accident had happened at the forward end of the train, and he had notified the engineer thereof; and the engineer says that he became aware of the accident by seeing a man, probably the flagman, stooping and looking under the train, and hearing some person hallooing, which sug^ gested to his mind that an accident had happened, and that he then put on the emergency brake. So that the signaling done by the crossing flagman, if done by him, was too late to be effective in any way.
[4] The train was only going from 4 to 6 miles an hour, and could have been readily stopped, according to the evidence, within 15 feet, which would have been in time to have saved the child from accident, if the crossing flagman, or the lookout on the end of the train, had attended to his duties and signaled the engineer in time. The lookout, who was stationed in the first empty car, or gondola, of the train, failed to see Clifton until he was within 15 feet of the track, although the train traversed Union street, some S20 feet, with an open cemetery along one side of the street, whereby pefsons passing in Main street could have been easily seen at any time while the train was making that distance. It was the lookout’s duty to have seen the child, and his failure to do so constitutes negligence. He, too, says that he gave the necessary signals to the fireman to stop the train; but, as has been seen before, his testimony is contradicted by the fireman and the engineer, who discovered the accident for themselves, and the engineer put on the emergency brake. He may have signaled the fireman, but his signal was too late to be effective.
“It is the grossest negligence for a railway company to back a train through the streets of a town, particularly through a part where children congregate, without having some one *45 to keep a lookout from the forward end.” Hollins v. N. O. & N. W. R. R. Co., 119 La. 418, 44 South. 159.
And where a lookout is so stationed, and he fails to do his duty, the same degree of negligence is imputable as if none were present.
“Parties in charge of a railroad train do not discharge their whole duty by pursuing the regulation methods of giving notice and warning at a particular time or place, when special circumstances call for additional warnings and signals. The precautions to be adopted and the steps to he taken in aid of safety increase as the danger of accident and injury is increased.” Ortolano v. M. L. & T. R. R. Steamship Co., 109 La. 902, 33 South. 914.
[5-7] It is the duty of railroad employes in the operation of trains to keep a reasonable lookout for children, especially in a city, and failure to do so constitutes negligence. Operators of trains have no right to assume that a child of tender years running toward the tracks will stop before crossing. A lookout or flagman, while he is the guardian of a street crossing, has no right to assume that a child of tender years approaching such a crossing will see the signals of danger or appreciate the perils of his position, or remain in a place of safety; but, on the contrary, he must assume that the child will place himself in danger, and he is therefore charged with the duty of signaling the train to stop, or of removing the child from his perilous position, and if he fail in this he is negligent.
[8] Plaintiff has sustained the burden of proof in this case, and has shown negligence and fault on the part of the defendant. The mother is the sole support of the child, and she earns §5 per week. The child is without means, and the loss of his right arm will always interfere with his earning capacity. In a similar case, in 1886, a verdict of $10,000 was affirmed. Ketchum v. Railroad Co., 38 La. Ann. 777.
The judgment appealed from is affirmed.