CISCO & N. E. RY. CO. v. WOOD et ux.*
(No. 1351.)

(Court of Civil Appeals of Texas. El Paso. Oct. 26, 1922. Rehearing Denied Nov. 16, 1922.)

1. Appeal and error ⟶1060(4) — Remark by plaintiffs' attorney, if error, held not prejudicial in view of verdict.

In an action against a railroad company for injuries sustained by plaintiff wife in an automobile accident at a crossing, a remark by plaintiffs' attorney that defendant should have had a doctor to testify as to the nature of the injuries to the wife, which the court refused to exclude, if error, held not prejudicial where the verdict was not excessive.

2. Trial ⟶133(6)—Remark of counsel as to effect of special finding held not reversible error in view of instruction.

In an action for damages sustained in collision between defendant's train and plaintiffs' automobile at a railroad crossing, a remark by plaintiffs' attorney with reference to an issue submitted to the jury that, if they answered that plaintiffs were driving at a rate in excess of 6 miles per hour when 30 feet from the track, they could not recover held not reversible error, in view of instruction to disregard remark.

3. Railroads ⟶350(26)—Findings acquitting automobile driver of contributory negligence sustained.

Evidence held to sustain the jury's findings that plaintiff, driving an automobile struck by a train backing over a crossing at night, exercised such degree of care as a person of ordinary prudence would have taken under the circumstances.

4. Railroads ⟶348(4) — Finding cars were propelled over crossing without warning sustained.

Evidence held to sustain findings that cars striking plaintiffs' automobile were propelled over the crossing without warning.

5. Railroads ⟶307(4) — Brakeman flagging own train not a watchman at crossing.

That a brakeman flags a street crossing only for the train on which he is brakeman, his duty terminating when his train has passed the crossing, does not make him a flagman or watchman within the contemplation of the law requiring a railroad company to maintain a flagman or watchman at a street crossing.

6. Trial ⟶351(5)—Special issues as to speed of automobile struck by train properly refused.

Where the court had submitted the issue of plaintiff's contributory negligence vel non, it was not error to refuse to submit issues as to the distance in which his automobile could have been stopped, and whether, if it had been driven at not exceeding four miles an hour, plaintiff could have seen the approaching train in time to have avoided the collision.

7. Trial ⟶350(2)—Special issues submitting evidentiary facts properly refused.

It is not error to refuse special issues submitting only evidentiary facts.

8. Evidence ⟶474(19) — Witness acquainted with automobile could testify as to value.

Where an automobile was injured by collision with a train at a public crossing, a witness in the automobile business, who knew the car injured and had kept it for plaintiff, could speak as to the value of the automobile; there being a market value for that kind of car at that time, and he knowing its reasonable market value.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Action by Grover C. Wood and wife against the Cisco & Northeastern Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Butts & Wright, of Cisco, and A. J. Thuss, of Dallas, for appellant.

V. L. Shurtleff, of Breckenridge, and C. L. Black, of Austin, for appellees.

WALTHALL, J. This suit was brought by appellees, Grover C. Wood and wife, Nellie C. Wood, against appellant, the Cisco & Northeastern Railway Company, for the recovery of damages for personal injuries to Nellie C. Wood, as the result of a collision with one of appellant's trains. and damages to Grover C. Wood in the loss of an automobile as a result of said collision.

Appellees alleged that while traveling in an automobile on Walker street in the town of Breckenridge, and at a point where said street is intersected by appellant's line of railway, their automobile was struck by one of appellant's trains, thereby causing the injuries to Nellie C. Wood complained of, and wrecking the automobile in which they were then driving.

The negligence on the part of appellant and complained of as the direct and proximate cause or causes of said accident and the resulting injuries and damages to appellees are the following: Failure to give warning of the approach of said cars; fail-

---

ure to have a light on said cars to warn persons about to use said crossing; failure to maintain a watchman at said street crossing to give warning of approaching trains; failure to have the street crossing lighted; failure to have any signal or notice of the approach of the train to the crossing; propelling the train at a high and dangerous rate of speed; in backing the train across the street crossing with flat cars in front of the string of cars thus obscuring the approach of the train.

Appellant answered by general demurrer, special exception, general denial, special denial of the negligent acts complained of by appellees; alleged contributory acts of negligence on the part of appellees in refusing to heed the warning given by one of appellant's employees at the street crossing; in driving their automobile at such rapid rate of speed as not to be under such control as ordinary care and prudence required when attempting to cross the railroad track; in failing to look or listen for approaching or moving cars or trains on the railroad track at or near the street crossing; that appellees failed to reduce the speed of their automobile to a rate not exceeding 6 miles per hour at a point not nearer than 30 feet of the railroad track and before making said crossing, the view of said crossing and of said railroad track and the approaching train being obscured by buildings and obstacles not within appellant's control, and although appellant's servants had warned appellees of the danger of attempting to cross the railroad track at that time and place in driving their car immediately behind a companion car and in such close proximity to same that it was impossible for appellees to see and hear the warnings of appellant and see and hear the moving train until it was too late for appellees to stop said automobile, and but for said negligent acts appellees could have seen the warnings and have seen and heard the moving train.

The case was tried with a jury, and submitted upon special issues. The jury found upon all of the special issues submitted in favor of appellees, and upon such findings judgment was rendered in favor of appellees.

Without quoting the verbiage of the special issues submitted, but stating them briefly in the order submitted, the jury found:

(1) Plaintiffs, by the exercise of ordinary care, could not have seen the approaching train in time to have stopped their automobile before the collision with the train had they kept a lookout for the train.

(2) Plaintiffs were not guilty of contributory negligence as that term is defined in the charge.

(3) By the exercise of ordinary care, and by looking and listening, plaintiffs could not have seen or heard the approaching train in time to have avoided the injuries alleged.

(4) When approaching and within 30 feet of the railroad track the automobile was running at the rate of 6 miles an hour.

(5) By the use of ordinary care, plaintiffs could not, when at a distance of not less than 30 feet from the tracks, have seen or heard the train as it approached the crossing in time to have stopped the automobile and prevented the accident.

(6) The view of the railroad crossing was not wholly or partially obscured at the time of the accident. The court, under this issue, told the jury that the "view of the crossing" means that portion of the railroad track to the front and to the right and left of one approaching the crossing, and that the view of the crossing is obscured when one approaching the track is not able to see an ordinary train at a sufficient distance to enable him by the exercise of ordinary care to take the necessary steps for his safety.

(7) In approaching the track plaintiffs reduced the speed of their automobile to not exceeding 6 miles per hour at some point not nearer than 30 feet of the track before making the crossing.

(8) If the jury answered question 7 No in that event only, they were to state whether or not such failure was the proximate cause of the collision. Answering Yes, the jury need not answer this question. The jury answered Yes.

(9) The appellant, at the time alleged, caused the cars to be propelled across Walker street crossing without giving warning of the approach of said cars.

(10) Propelling the cars across Walker street without giving warning of the approach of said cars was an act of negligence.

(11) The act of negligence in propelling said cars across Walker street without giving warning of their approach was the proximate cause of the injury sustained by plaintiff.

(12) At the time of the accident appellant did not have a watchman at Walker street crossing to warn persons about to use said crossing of the approach of cars.

(13) The failure to maintain such watchman at the Walker street crossing was negligence.

(14) Negligence in the failure to maintain a watchman at the Walker street crossing to warn persons about to use said crossing was the proximate cause of the injury sustained by plaintiffs.

Findings 15 and 16 have reference to the amount of the damages sustained on account of the injuries to Mrs. Wood and the damage to the automobile.

In the closing argument appellees' attorney stated to the jury that:

"The defendant should have had a doctor there to testify as to the nature of the injuries of the, plaintiff Nellie C. Wood."

The court refused to instruct the jury not to consider such remark, and the remark and the refusal of the court to instruct the jury as requested are submitted as reversible error, under the first proposition. It is insisted that where the defendant cannot compel the plaintiff to submit to an examination by medical experts for the purpose of giving expert testimony, and where plaintiff does not voluntarily offer to submit to a medical examination such remark constitutes reversible error.

The evidence shows that Mrs. Nellie C. Wood was severely injured in the collision of the automobile with the train, and appellant makes no complaint of the amount of the damage found by the jury. The record does not show that she ever tendered herself to appellant for examination by a physician as to her injuries, nor that she was examined by physicians not of her own choosing; nor does it appear that appellant requested that she submit to an examination as to her injuries. The remark of counsel does not refer to any particular doctor, nor that the doctor, if present, could testify as to the injuries of Mrs. Wood so as to create the impression on the minds of the jury that appellant was withholding any evidence.

[1] While we think the remark of counsel complained of is beyond the record, and improper, it is trivial, and we think the remark and the ruling of the court in not excluding the remark does not show reversible error. In looking to the evidence it does not seem to us that the verdict as to the amount is against the apparent weight of the testimony, or excessive, and it is not suggested by appellant that the verdict, as to the amount, is not sustained by the evidence.

In his argument to the jury plaintiff's attorney said:

"If you answer that the plaintiffs were driving at a rate of speed in excess of 6 miles per hour when at a distance of 30 feet of the railroad then they cannot recover."

The court, at request of appellant instructed the jury to disregard and not consider the statement. It is insisted by appellant that the findings of the jury that the automobile was running 6 miles an hour when it approached and was within 30 feet of the track is wholly without evidence to support it, and concludes therefrom that the remark of counsel influenced the jury in its finding on that issue. The finding of the jury on the issue is not wholly without evidence to support it as claimed. Appellee Grover C. Wood testified:

"I began to slow down 50 to 100 feet from the track. I guess I drove these two 'blocks down Walker street at four or five miles an hour before I began to slow down. When I got within 100 feet of the track I began to slow down and slowed down to three or four miles an hour. It might have been slower than that. It was not over four miles an hour."

True, the witness does not state his rate of speed in going the last 30 feet to the track but evidently the witness meant to say and convey the idea to the jury, and the jury so understood it, that he continued to go not exceeding 4 miles an hour until he reached the track at the place of the accident. But the jury found (sixth finding) that the railroad crossing was not wholly or partially obscured, and made other findings which, if sustained by the evidence, would relieve appellees against the defense of contributory negligence as a matter of law. Hines v. Richardson (Tex. Civ. App.) 232 S. W. 889. One of the defenses relied on by appellant as a contributory act of negligence on the part of appellees and as the direct and proximate cause of the injuries complained of was that appellees failed to reduce the speed of their automobile to not exceeding 6 miles per hour at a point not nearer than 30 feet of the track before making said crossing, the view of the crossing and the track being obscured, etc., thus invoking the provision of section 17, c. 207, General Laws, 35th Leg. p. 479 (Vernon's Ann. Pen. Code Supp. 1918, art. 820l) The remark of the attorney, complained of, doubtless assumed that the jury might find against appellees on the issue submitted under the section of law above referred to. We do not concur in the contention of appellant that the findings of the jury on the issues of facts submitted under the provisions of section 17, above, are wholly without evidence to support them, and must assume that the jury observed the court's charge to disregard the remark.

[2] But aside from the above observations and conclusion the question is presented: Does the remark itself constitute reversible error? It was in effect held by the Court of Civil Appeals of the First District in Fain v. Nelms, 156 S. W. 281, and in Railway v. Hodnett, 182 S. W. 7, that it was error for counsel to inform the jury of the effect of their answer in a certain way to certain issues. In neither of the two cases was the jury instructed not to consider the remark of counsel. In neither case, however, was it held that such remark, while improper would constitute cause for reversal. In Railway v. Casey, 172 S. W. 729, and Guffey v. Dinwiddie, 182 S. W. 444, the Court of Civil Appeals, respectively, of the Second and Sixth Districts, it seems, have committed themselves to a contrary doctrine. We refer to the cases without discussing them. In Railway v. Casey, supra, a writ of error was refused by the Supreme Court, and, as said by Mr. Justice Fly in Southwestern Tel. & Tel. Co. v. Sheppard (Tex. Civ. App.) 189

S. W. 799, "it would seem that it is settled that such action upon the part of counsel was not error." We have concluded that, in view of the above findings of the jury, and the instruction of the court to the jury not to consider the remark of counsel, the proposition does not present reversible error. We do not, however, desire to be understood as holding that such remarks in all cases are to be considered as presenting no error. In some cases it should be treated as reversible. Morris v. McGough (Tex. Civ. App.) 230 S. W. 1094; Railway Co. v. Long (Tex. Civ. App.) 219 S. W. 212.

Propositions from '3 to 10, both inclusive, challenge the sufficiency of the evidence to sustain the several findings of the jury to which they refer. It would extend this opinion to unreasonable length to quote the 60-odd pages of the evidence and a discussion of it as applied to each proposition. We have read the evidence carefully in considering the several propositions presented. The witnesses for appellant and appellees are not agreed on any one fact, except that of a collision, and that it occurred late at night and at the intersection of Walker street and the railroad track, and that the Walker street crossing, by reason of its situation and surroundings, was an unusually dangerous crossing. One witness said the night was very dark, while another said it was a clear moonlight night. Dr. Wood, the driver of the car at the time of the collision, testified that he approached the crossing at a rate of speed not exceeding 4 miles an hour; that in approaching the railroad tracks he looked for a train, but could not see or hear one. H. J. Bart, a brakeman for appellant, testified:

"We were going on the house track for the purpose of switching cars in there. As we stopped at the house track switch, and after the engineer stopped, the rear brakeman and myself, who was in charge of the work, descended from the car, and while the rear brakeman was throwing the switch for the house track I approached the crossing, which was the usual thing, to protect and flag this crossing. After the brakeman threw the switch I gave the signal to go forward, shove the cars; an automobile approached Walker street crossing, and I signaled the car to stop, and he did not pay any attention to me and almost ran over me. I run over the crossing and saw this car (appellees') coming toward me, and then I stopped on the other side of the crossing, and the driver (first car) hollered something, and I noticed then, at the same time, there was another car approaching, and I gave another signal to stop. I seen he was not going to stop and I gave the emergency signal to stop. I gave three violent signals, and then my light went out, and I hollered to the rear brakeman to continue my signals, which he did. The automobile was approaching just as we were on the bridge, and the person in the automobile seen he could not beat it across, and turned parallel with the way we were going, which was north, and run into

a flat car right at the left end of the flat car between the trucks and the stirrup, and the automobile hit so it was thrown over to one side and closed the door. * * * From the place we came to a full stop to throw this switch I judge it is approximately 150 feet to the center of Walker street. At the time the first automobile approached I was standing on the crossing. * * * I can't say how far the second automobile was from the first. * * * When the first car approached the track and the second one approached it, I would judge they were running 25 miles an hour. I had to get out of the way of the first car, and continued to make stop signals with my lantern. * * * At the time this automobile and the flat car ran together we were traveling approximately 2 miles an hour. * * * I think that is about as fast as they could back up in that short distance. After the automobile ran into the train we got the engineer to stop in about 15 feet. * * * It was a dangerous crossing to start with on account of the way it was situated, and on account of its situation I had instruction to be there myself or have some one there to flag the crossing. On the night of this accident I was there to do the flagging myself, and I was at the crossing before the train had moved north from the switch, and stayed there. * * * When I got to the crossing I judge the nearest car was about 150 feet south of me. I had just about reached the crossing when the first automobile approached. * * * The first automobile passed me going about 25 miles an hour I should judge, and I should judge the second car approached the track about the same. * * * When the second car reached the track it turned around and headed north, but I don't say when it turned and hit it was running 25 miles an hour. * * * I judge when the crash came that the second automobile was going 12 or 15 miles an hour. I judge he turned about 10 feet after he hit the crossing, probably not that far, but close to it. * * * I mean he turned before he got on the track, and after he turned he got on the track. As he turned this train was still coming up about 2 miles an hour. You ask how far this car going 12 miles an hour went before the train going 2 miles an hour overtook it. Well, from the middle of the crossing it went to where he hit the side of the flat car about the north end of the crossing."

R. S. Stedham, one of appellant's brakemen on the train, testified:

"You ask me to state what transpired on that occasion to the best of my memory. Well, between 1 and 2 a. m. we were pulling up the main to shove in the house track switch, and Brakeman Bart, the swing brakeman, went to the crossing, and I climbed on the head car. He give me the go-ahead or proceed signal. We cut off the air, I presume between the switch and crossing. I got off the car, and as I got off the car he hollered to some one to stop, and commenced a violent stop signal, and I passed the signal, and just about the time I started his lamp went out, and as his lamp went out the automobile crossed the track. I continued my signal for an instant and then I heard a crash. Right afterwards we got the train stopped, and I walked around and met Bart, and he told me to stop the train; we was on an

automobile. * * * There were five cars in that train at that time. The head car, or the one that collided with the automobile, was a flat car loaded with a steel drum. The drum would cover a space nearly as large as the car. * * * It looked like Bart was trying to get out of the way of the first automobile, and when the automobile cleared him, his lantern went out."

· The witness was on the car next to the one in the collision. The engineer could see witness Stedham's signal, but could not see Bart's signal. The signal given the engineer was to stop the train immediately. C. B. Collum, civil engineer, for appellant, testified that the distance from the point of the switch to Walker street is 78 feet. Walker street is 100 feet wide where it intersects the railroad tracks. Engineer Collum testified, and his plat of the ground on the south side of Walker street shows, that there is a string of buildings on the south side of Walker street, extending to its intersection with Veale avenue. Along and on the west side of Veale avenue are the railroad tracks.

[3] The automobile, as it approached the tracks, was going east on Walker street and a little to the south of the center of Walker street. Just before it collided with the first or end railroad car it turned obliquely to the northeast, and struck the railroad car some 3 feet from its northwest corner. There was no light on the front end of the first car as it backed into Walker street, and no signal of any kind was given to appellees as they approached the railroad tracks, except as stated by the Brakeman Bart in his effort to flag the crossing. We think the jury, from the evidence quoted, might well have concluded that Bart's lantern went out while attempting to flag the first automobile, and signal Brakeman Stedham, and that appellees did not see any stop signal. If, as testified by Dr. Wood, the night was dark; that when he approached the tracks he looked up and down the tracks to see whether or not a train was coming, and did not see a train approaching, and did not hear any noise, and did not see others there; and if the railroad tracks on Veale Avenue south of Walker street from which the backing train emerged into Walker street were obscured by buildings on Walker street, the jury's findings 1, 2, 3, and 5 would not be wholly without evidence to sustain them, as insisted by appellant. Nor can it be said as a matter of law that a person of ordinary prudence would have taken a greater degree of care under the circumstances than that testified to by appellees.

Under the facts found by the jury section 17 of chapter 207, Gen. Law, 35th Leg. p. 479, is not applicable. Such findings render it unnecessary to discuss the evidence as applied to findings four, and seven. By findings 9, 10, and 11 the jury found that appellant gave no warning of the approach of the cars in backing into Walker street, that the failure to give warning was negligence, and that the negligence was the direct and proximate cause of the injury.

Appellant's brakeman testified that before backing the train into Walker street the bell was rung and whistle blown. Dr. Wood testified:

"There was no light, no switchman, no ringing of the bell, or nothing, when I was hit. * * * There was no light on that car or anywhere about the end of the train that was being backed across the crossing. There was no signal of any kind given to warn any one that the train was being backed across the crossing."

When asked how he knew the railroad does not maintain a watchman or gates there, the witness Wood said:

"When I crossed it I never saw a watchman there. * * * I did not see any watchman that night, and don't know whether they had one or not. There has never been any gates or device or watchman there. * * * There was not any watchman or gate there that night, and was not before that. * * * If there had been a man there with a light, I could have seen the light. * * * I swear there was not any man and any light there."

[4] Dr. Wood testified that he looked ahead on Walker street and on either side in approaching the tracks, and saw no light and saw no train until he was in the wreck. The evidence, we think, is sufficient to sustain findings 9, 10, and 11.

[5] The jury found that appellant had no watchman at Walker street to give warning of approaching trains, and that a failure to have such watchman was negligence. If it was negligence not to have a watchman at that crossing, it was not negligence per se. Appellant's insistence, however, is that the finding that appellant had no watchman at the crossing is not sustained by the evidence. We do not concur with appellant in the contention. We have quoted above Dr. Wood's evidence. The evidence in the case, both of appellees and appellant, is sufficient, we think, to show that the Walker street crossing, owing to its peculiar situation and surrounding, was peculiarly and extraordinarily a dangerous crossing, and the principal street in the city running east and west, and much traveled. The word "flagman" would possibly have been a better word than "watchman"; but we hardly think that a train brakeman whose duty it was to flag a street crossing only for the train on which he is brakeman, and which duty terminated when his train had reached and passed such crossing, such temporary service at such crossing, would not constitute such brakeman a flagman or watchman at such crossing within the contemplation of the law when it becomes the duty of a railroad company to

maintain a flagman or watchman at a street crossing.

The evidence is sufficient to show that a flagman or watchman was not maintained at the crossing. We do not pass upon the question as to the duty of appellant to have maintained a watchout at the crossing.

[6, 7] Appellant's propositions 11 and twelve, complaining of the refusal of the court to submit requested issues, the first as to the distance the automobile could have been stopped at which it was running as it approached the crossing, and the second whether, if the automobile had been driven at a speed not exceeding 4 miles an hour at the time of the collision, appellees could by the exercise of ordinary care have seen and heard the approaching train in time to have prevented the collision, do not, in our opinion, present reversible error. The court had submitted the issue of contributive negligence vel non. The requested issue, whatever finding the jury would make would not constitute negligence per se. Hovey et al. v. Sanders et al. (Tex. Civ. App.) 174 S. W. 1025. The first requested issue submits only an argument, and implies that appellees saw or heard the approaching train. The requested issue submits only an evidentiary fact. The same observation applies to the second requested issue.

[8] The thirteenth proposition presents no error. Bramlett fully qualified to speak as to the value of the automobile. He said he was in the automobile business; knew the Dr. Wood car; had kept it for Dr. Wood; there was a market value for that kind of car at Breckenridge at that time; knew its reasonable market value, and stated it. Appellant has no ground for complaint where the jury finds a less value for the injured or destroyed automobile than the evidence justifies, as submitted in the fourteenth proposition.

Finding no reversible error the case is affirmed.