## No. 9927.

### Orleans

———

### GIRARD, Appellant, v. THE ILLINOIS CENTRAL RAILROAD COMPANY.

———

(March 29, 1926. Opinion and Decree.)

———

*(Syllabus by the Court.)*

1. **Louisiana Digest—Evidence—Par. 351; Negligence—Par. 41, 42.**

In an action ex delicto, plaintiffs must prove with certainty and by a preponderance of evidence the acts of negligence charged against the defendant.

2. **Louisiana Digest—Appeal—Par. 625, 628.**

Where issues of fact are mainly involved and the verdict and judgment in the trial court are against the plaintiff, the appellate court will affirm the judgment, in the absence of manifest error.

Appeal from the Civil District Court, Parish of Orleans, Hon. Sam A. LeBlanc, Judge.

Action by Joseph Girard and Adele Girard, his wife, against the Illinois Central Railroad Company, for damages for physical injuries.

There was judgment for defendant, and plaintiff appealed.

Judgment affirmed.

H. W. Robinson, of New Orleans, attorney for plaintiff, appellant.

Lemle, Moreno and Lemle, of New Orleans, attorneys for defendant, appellee.

BELL, J. This is a damage suit brought by plaintiffs against the Illinois Central Railroad Company for the death of their

eight-year-old son, who, it is alleged, was afflicted by arrested mental development, causing him to have the intelligence of a child only half his age. The accident occurred on May 15, 1924, about 11:30 a. m. The defendant's inbound passenger train, known as the Panama Limited, had just crossed the intersection of its roadway at Carrollton Avenue, in the City of New Orleans, when the boy, standing near or approaching the train from the left or Canal Street side of the track, was struck in the forehead by some part of the train and died a few hours later from his injuries. The acts of negligence charged in the petition are that the train was going at a rapid rate of speed, over 25 miles an hour, and that the fireman of the train failed to keep a proper lookout for the boy, who was on the fireman's side of the train. The case was tried before a jury, which found for the defendant. Plaintiffs appeal from a judgment rejecting their claim.

We have given the closest scrutiny to that part of the record regarding the cause and circumstances of the accident, and we are unable to find any error in the conclusions reached in the lower court.

There appears to have been but three eye-witnesses to the accident; in fact, we entertain considerable doubt as to whether there were more than two of these witnesses who actually saw the boy at the moment he was truck by the train. Jules Calve, a colored man, one of the plaintiffs' witnesses, testifies that he was operating a soft drink saloon on Short Street, within 25 or 30 feet from the lower or Canal Street side of defendant's track. From photographs offered by plaintiffs, it appears that in front of this building or store in which Calve conducted his business, there is a cement sidewalk. The building faces the lake side of the city, that is to say, the direction from which

the train was approaching, but as this witness swears that he was directly in front of his building, standing in the doorway and looking toward the train when the boy was struck, and as the photographs show that the place of the accident was near the switch located several feet beyond and in the rear of the building, we are unable to understand how this witness could have seen the accident. He further testifies that he saw the fireman of the train, while the engine was crossing Carrollton Avenue, a distance of over 250 feet from his store, in the act of firing his engine, and that he had a shovel in his hands. Witness qualifies this statement, on cross-examination, by saying that he only saw the fireman put the shovel down and take his seat in the cab. Both the engineer and the fireman positively swear that no firing was done within a mile or more before the train reached Carrollton Avenue.

We conclude, from Calve's testimony, that the only material manner in which he was concerned at all with the accident was in lending assistance after the accident by carrying the boy to his parents' home, located about a block and a half away.

John Smith, another witness for plaintiffs, testifies that he was standing on the sidewalk near Calve's store, looking down the track in the direction of the Union Station; that the boy was down in a hollow at the foot of an embankment, which ran from the elevation of the track toward the side of Calve's building, and that the embankment was some eight feet high. All of the witnesses agree as to the height of the embankment. Smith testifies positively that the boy was at least eight feet from the track, and that at the time he saw him the train was slowing up for the purpose of stopping at the Carrollton Avenue depot or passenger shed, located at

the right and upper side of the track. He further states that the boy was chasing some goats down the track and on the lower side of the embankment, in the ditch or hollow referred to, but that he was not on the embankment, and that the goats suddenly darted in front of the train, the boy chasing them, and running so close to the train that the engine struck him in passing by. This witness ventures the opinion that the step from the engine cab hit the boy, while other testimony is to the effect that the boy was struck by the crossbeam directly over the pilot or "cow catcher" of the engine. Smith further states that when the boy left the hollow and started to run up the track, the train was right there. It is averred in the petition that the boy was playing with his pet goat, and all eye-witnesses to the accident agree that he was attempting to follow the goat, which ran across the track.

From the physical injuries which the boy suffered, we are convinced that while either standing near or running toward the train, which had partially passed him, the boy's head came in contact with some part of the engine, and that it was through his own carelessness which was the proximate cause of the accident.

The child's mental condition relieves him of any contributory negligence, and none can be attributed to the parents, who are shown to have taken reasonable care in guarding him from accidents which could have befallen him by virtue of his affliction already noted.

The sole question, therefore, for definite determination is whether the train was being operated carelessly and in such a manner as to fix the liability for the accident upon the defendant. Plaintiffs' own witness, John Smith, testifies that he heard the train whistle blowing and the bell ringing as the train was crossing Carrollton Avenue, a distance of more than a block from the point of accident; that the train was moving slowly, and that the fireman, seated in his cab, was looking ahead. Even Calve, the other witness for plaintiffs, swears that he heard the train whistle and that the bell was ringing as the train approached Carrollton Avenue.

Brady, the fireman of the train, testifies that the automatic bell was ringing and had been ringing for some time before the train passed Protection Levee, which is well on the lake side of Carrollton Avenue, and that the crossing whistles and station whistles were blown before the train crossed the avenue; that he was seated on the left side of his cab, looking ahead, and that he was not firing his engine; that he did not see the boy as his engine reached Carrollton Avenue, but saw him for the first time when the boy was near Calve's store, down the embankment, close to the fence, and running alongside of the track with some goats; that the goats crossed the track and the boy continued running after them until he bumped into the side of the engine. The engineer of the train corroborates the fireman as to the signals which were given before reaching Carrollton Avenue, and both of these employees, as well as the conductor of the train, testify that the train was not going more than from four to six miles an hour.

We are convinced from all the circumstances of this case that the negligence with which the defendant has been charged is not substantiated by any evidence adduced on behalf of the plaintiffs. The accident, in our opinion, was wholly unavoidable, and no negligence can be attributed to the defendant.

It is urged, on behalf of plaintiffs, that we apply to this case the doctrine announced in Ryan vs. L. R. & N. Company,

146 La. 39, 83 South. 371, where the Supreme Court said:

"It is the duty of trainmen to keep a reasonable lookout for children, especially in a city, and failure to do so constitutes negligence. Trainmen have no right to assume that a child of tender years, running toward the track, will stop before crossing."

We see no application of the facts in that case to those now under consideration. In the Ryan case, the defendant company was operating a train made up of four tank cars and two coal cars ahead of the engine, with five passenger cars behind the engine; the train was being operated across one of the principal streets in the City of Baton Rouge, and the flagman ahead of the train, who had seen the injured child with other playmates crossing and recrossing the track on bicycles before the approach of the train, failed to caution the children or to flag the train, and this flagman, as an employee, was himself shown to have been an epileptic.

It is plain from the facts in the instant case that irrespective of the speed of the train, in no manner shown to have been excessive, the accident could not be attributed to this fact.

We find no error in the judgment of the trial court, and same should be affirmed, at plaintiffs' cost, in both courts.