Plaintiff was knocked down and injured when struck by a coal car, at the time being backed by defendant's locomotive, as he was in the act of crossing defendant's house track close to its depot in the Town of Oak Grove, Louisiana. He instituted this suit against Guy A. Thompson, trustee of the Missouri Pacific Railroad Company, to recover damages because of his injuries, which he accredits to the gross negligence and carelessness of defendant's agents and employees.
The material facts of the case are not in serious dispute. At about the hour of 1:30 P.M. November 2, 1945, plaintiff left his home, some distance west of the depot and house track, and proceeded easterly with the intention of transacting some business in the Town of Oak Grove. He quit the street that leads southerly across the street that traverses the main business area of the town, and entered upon a well beaten pathway that led easterly from said street across the railroad property, *Page 147 
south of the depot. At this time, the coal car, then detached, was across the path and blocked direct travel beyond it. Plaintiff turned south along the side of the car, the southerly and of which, we are convinced, although there is some dispute over the question, extended a few feet below the north end of a cotton platform five or six feet high, parallel to and west of the house track. The space between the side of the car and the platform was not over 16 inches. This clearance was reduced by some three inches by braces and a ladder attached to the side of the car. It was quite difficult for a man of plaintiff's size to pass through the space; in fact, he could only do so sidewise. As plaintiff cleared the corner of the car and was in the act of stepping upon a cross-tie, preparatory to crossing the track, a train of cars backed from the north, coupled with the coal car and shoved it slowly forward about one-half its length. It struck the left side of plaintiff's body and knocked him a few feet forward and under the platform.
At the time of the accident there were assembled on the railroad yard, south of the locus of the accident, many people and vehicles of various kinds in which had been hauled potatoes to be loaded into box cars then being switched over the main and house tracks and spotted at convenient places.
Plaintiff charges that the coal car was violently contacted and pushed forward by the train without any signal or warning of the intention to do so; that the locomotive, at the north end of the train, consisting of twelve box cars, was not visible to plaintiff and due to a curve in the house track easterly, above the depot, his presence was not known to the operatives of the train; that the movement of said car and train was effected without there being on the west side thereof any trainmen to apprise plaintiff or any other person desiring to travel over said path, of the purpose so to do; that the omission to protect the situation then and there, and the sudden and violent pushing forward of the said detached coal car, in the manner and under the then existed circumstances, was negligence and the proximate cause of the accident; that because of the presence of so many people and vehicles engaged in potatoe loading, the duty devolved upon defendant and its servants to exercise the utmost care and prudence in switching its cars at that time.
Defendant denies that plaintiff was injured from the negligence of its agents and employees, but, on the contrary, affirms that the operation of its train at the time and place of the accident was proper, careful and efficient; that plaintiff, who was then aged seventy-seven and afflicted with infirmities of sight, hearing and judgment, without defendant's knowledge, permission or consent, chose to walk between the cotton platform and defendant's house track, in disregard of his own safety, while there were available to him other and safe routes to his destination, one of which was over defendant's property; that defendant's agents and representatives had no reason to think that any one would endeavor to cross its premises by the unsafe and hazardous route adopted by the plaintiff, and therefore, no duty rested upon them to guard or protect said route.
In the alternative, employing the above related acts and actions of the plaintiff as a predicate therefor, defendant pleads contributory negligence on his part in bar of recovery by him.
Plaintiff appealed from judgment that rejected his demand and dismissed his suit.
In 1941 plaintiff suffered a cerebral hemorrhage which resulted in permanent disability to enunciate words. For this reason he did not testify in his own behalf. He was seventy-seven years old when injured.
The path that was blocked by the coal car was freely used by pedestrians as a short cut to the business section of Oak Grove. Although it traversed defendant's property from west to east, crossing both the main and house tracks, the record is barren of evidence indicating that any objection or protest had been registered by defendant's officers and/or agents against this practice.
[1] In going upon and across defendant's premises, plaintiff was acting solely for his own convenience and in his own *Page 148 
interest. The railroad company was to no extent concerned with his mission, although he had the implied permission of the defendant to cross its premises at that place. It would seem clear, in view of the above related facts, that plaintiff's status was not that of a trespasser while traveling the well beaten pathway, but we are not certain this status was not acquired after he left the pathway and chose to follow the unsafe and hazardous route between the car and the platform. Surely, by so doing, he exceeded the tacit permission of which he was availing himself. 38 Am.Juris. p. 767, § 104. Defendant contends that if not a trespasser while on its premises, plaintiff surely was a gratuitous licensee. He was not an invitee. So far as concerns plaintiff's chance of recovery, it is immaterial whether his status was that of trespasser or licensee. We shall accept his status as that of a licensee, discuss and dispose of the case on that premise. However, there is very small distinction between the two as regards the duty of the owner toward them.
44 Am.Juris. page 642, § 425, defines a licensee as: "a person who for his own convenience, pleasure, or benefit, enters upon the property of another pursuant to the license or implied permission of the owner."
In discussing further such status, it says:
"Accordingly, it is held that persons having no invitation to go upon railway tracks, but who walk thereon for their own convenience, are mere licensees, taking existing conditions as they find them, and cannot require the railroad company to protect them from dangers which are as apparent and open to their own observation as to the company.
* * * * * *
"Against a bare licensee, a railroad company has a right to run its trains in the usual way, without special precautions, if the circumstances do not of themselves give warning of his probable presence, and he is not seen until it is too late.
* * * * * *
"The only duty of the railroad company toward him is not covertly to alter the property so as to create a peril which is not obvious to or to be expected by the user, and to take reasonable care, where award of his presence, to prevent injury to him after knowledge of impending danger, and not to inflict wilful or wanton injury."
The record unquestionably establishes that plaintiff was not injured from any wilful or wanton act of defendant's agents and representatives.
[2] One of the brakemen who had been protecting the crossing south of the depot was signalled to proceed up the house track and attend to the coupling of the train with the detached coal car. On his way up he observed conditions about the south end of the coal car and did not see plaintiff or any other person thereabout. Naturally, he concluded that it was safe to push the coal car down the track. In so doing and in giving no further attention to conditions about the south end of this car, he acted within his rights as an employee of the railroad company. No reasonable person would have for a moment thought that any adult would endeavor to pass from east to west by squeezing through the narrow space between the car and the platform. The principle applicable to this state of facts is clearly stated in § 453, p. 681, 44 Am.Juris, as follows: "Trains Moving Backward or on Wrong or Unusual Track. * * * If, in view of the place and time of the accident, the railroad company is under no duty to anticipate the presence of persons on its tracks, the circumstance that the engine or train is run backward and without a lookout does not constitute negligence."
Plaintiff's presence was unknown to defendant's agents. They were at their posts of duty on the east side of the train and below, giving and receiving signals needful to efficient switching. He approached from the west, covering the 35 feet from the street to the coal car and then the additional 20 feet or about, to the point where injured, without any of defendant's servants having seen him. Surely, it would be unreasonable to contend that defendant at the time should have maintained two lines of operatives for the protection *Page 149 
of licensees and trespassers on the premises, who would not, for their own safety and welfare, employ ordinary care.
We are unable to perceive wherein the defendant was negligent or careless to any degree in the operation of its train.
[3] But, should it be granted arguendo that we are in error in this respect, certainly plaintiff's own contributory negligence precludes recovery by him.
There was open to plaintiff at his left, a safe route across defendant's ground. By turning to his left and going 25 feet around the north end of the coal car, then to his right for the same distance, he would have again found himself upon the pathway.
Plaintiff was, of course, well acquainted with the physical surroundings about the depot. He must be held to have known that switching operations were then in progress and that cars would be spotted on the house track into which the large quantities of potatoes then on the ground would be loaded. As he turned south from the path the referred to crowds and vehicles were in plain view of him, and had he looked to his left before turning south he would have seen not far away a train of box cars, many hundred feet in length to which was attached a locomotive. All of this should have impressed him with the danger and hazard to which he would expose himself in proceeding as he did. He should have known, and doubtless did know, that the detached car would soon be moved. He acted at his own risk and peril. It is shown that throughout switching operations the bell of the locomotive constantly rang, although, being some distance away, several witnesses did not hear it.
[4, 5] The syllabus in Archey Settoon et al. v. Texas 
Pacific Railway Company, 48 La. Ann. 807, 19 So. 759, correctly reflects the law that perfectly fits this case. It reads:
"Where one goes on premises by implied permission, he does so at his own risk, assuming the responsibility of all risks incident to the place.
"Where there are two avenues of travel, and the more dangerous one is selected, the party injured cannot recover, if the injury inflicted was due to the risk incident to the route selected. The traveler assumes all risks in such cases."
Many more cases upholding this principle could be cited. Plaintiff cites and relies upon the following cases: Williams v. Missouri Pacific Railroad Company, 155 La. 349, 99 So. 286; Ryan v. Louisiana Railway Navigation Company, 146 La. 40, 83 So. 371; Lampkin v. McCormick, 105 La. 418, 29 So. 952, 83 Am.St.Rep. 245; Downing v. Morgan's Louisiana Texas Railway Steamship Company, 104 La. 508, 29 So. 207; Maher v. Louisiana Railway Navigation Company, 145 La. 733, 82 So. 872.
The accidents involved in the Ryan, Lampkin and Maher cases occurred at street crossings in cities, where pedestrians had a perfect right to be. The accident in the Downing case occurred in the Village of Berwick, Louisiana, in the nighttime. The deceased was run over and killed by the defendant's backing train while he was attempting to cross the track at a public crossing. There was no light on the rear end of the train and no trainman was stationed at the crossing to warn pedestrians of the train's approach. In the Williams case a seven year old girl was struck while crossing the track on a path used by the public generally, to the knowledge of the defendant. The train had been motionless near the crossing and was suddenly moved forward without a signal of any sort and without the crossing being protected by the railroad company.
All of these cases are easily differentiated in their facts from the case at bar.
[6] Lastly, plaintiff invokes the doctrine of the last clear chance in its effort to fix responsibility for the accident and its results upon the defendant. The facts preclude application of this principle of law. Defendant's agents and employees did not see the plaintiff in a position of peril, and we have held that they violated no duty to him in not seeing him before he was injured. *Page 150 
Plaintiff's counsel emphasize the fact that defendant's train was being operated in the midst of a populous area, the town of Oak Grove. This is true, but it cannot be overlooked that at the same time the switching operations, except when crossing the street south of the depot, were exclusively upon defendant's own yards and property and the accident occurred thereon.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.
KENNON, J., concurs in the decree.