The TEXAS AND PACIFIC RAILWAY COMPANY, Appellant,

v.

Federico SALAZAR, Appellee.

No. 6098.

Court of Civil Appeals of Texas, El Paso.

July 15, 1970.

Rehearing Denied Sept. 30, 1970.

Scott, Hulse, Marshall & Feuille, George W. Finger, James L. Gallagher, El Paso, for appellant.

Kemp, Smith, White, Duncan & Hammond, Wyndham K. White, El Paso, amicus curiae for Southern Pacific R. R.

Hardie, Grambling, Sims & Galatzan, Harold Sims, El Paso, amicus curiae for Atchison, Topeka & S. F. R. Co.

Dan Sullivan, Andrews, for appellee.

OPINION

FRASER, Chief Justice.

The appellee, Federico Salazar, sued the appellant, The Texas and Pacific Railway Company, for personal injuries and property damage resulting from a car-train accident which occurred in appellant's El Paso, Texas switchyards at the Cotton, or Tornillo, Street crossing on June 30, 1965.

Trial was submitted to the jury on special issues. The jury found, in answer to the first issue, that the crossing in question was extra-hazardous, and answered Issues 2, 3, 4, 7, 8 and 9 as follows: That an ordinarily prudent person in the exercise of ordinary care due to conditions, if any, surrounding such crossing, would have had a flagman at said crossing whose only duty would have been to flag automobiles and foot-traffic on such crossing; that the defendant failed to have such a flagman at the crossing in question; that such failure was a proximate cause of the injuries suffered by plaintiff Federico Salazar; that at the time and on the occasion in question, defendant required its flagman, one George Adkins, to operate the track switches, pass signals to the train engineer, and flag traffic on Cotton Street at the same time; that such requirement by the defendant of its flagman was negligence, and that such negligence was a proximate cause of the injuries suffered by the plaintiff. The jury did not find any other act of primary negligence against appellant, so it appears that the main issue in this case is whether the defendant should have had a flagman whose sole duty was to act as flagman in protecting traffic across the crossing in question.

The record reveals that at the time of the accident, an engine operated by the defendant was pushing 23 cars westerly on Track No. 2. The crossing in question consists of a dirt street with poorly defined boundaries which crossed 14 tracks at approximately right angles. The street runs generally north and south, while the tracks run generally east and west. Prior to the accident, the engine had pulled the 23 cars over the track in an easterly direction in order to switch over the crossing to couple into a string of cars which were standing adjacent to the crossing on the west side. The appellee, Salazar, was driving his automobile across the tracks in a northerly direction when the lead boxcar struck his automobile, shoving it across the dirt street into the string of boxcars standing west of the crossing. This occurred at approximately 9:30 P.M. There were boxcars standing next to the crossing on various tracks and, apparently, a boxcar was standing on the No. 5 track just east of the crossing. This No. 5 track was located approximately 13 feet south of the No. 2 track, on which the accident occurred. Appellee maintains that, as he was driving across the tracks, he saw two men standing approximately 40 yards from the crossing by a switch, and that one of the men suddenly started running toward the crossing, and at that very moment appellee claims

that he saw the boxcar at the right-hand side of his automobile. Appellee contended that the flagman was negligent in his manner of signaling, and in failing to properly station himself where he could effectively signal the engine of the train, and also failed to keep a proper lookout. Appellant maintains that the flagman saw the Salazar vehicle proceeding slowly across the crossing and immediately began signaling for said said vehicle to stop, and when the vehicle did not stop, he gave emergency stop signals to the engineer and ran toward appellee's automobile and yelled for Salazar to stop, but the automobile, according to the flagman, continued forward over the No. 5 track and continued on until he stopped on the No. 2 track where the accident occurred.

Appellant does not make any complaint about the submission of Special Issue No. 1, which inquires whether or not the Cotton Street crossing was an extra-hazardous crossing, nor does the appellant complain of the court's definition of the term "extra-hazardous". There does not seem to be any contention between the parties that the Cotton Street crossing was, as found by the jury, an extra-hazardous crossing and, in any event, the record amply supports the submission of such issue and the jury's affirmative answer thereto.

The parties, however, violently disagree as to the nature of the protection that appellant provided at the said crossing, as evidenced by appellant's Points 1–8. There are many cases holding that where an extra-hazardous crossing exists, the railroad must protect traffic by such means as would be done by a reasonably prudent person under the same or similar circumstances. It does not matter whether it is a flagman or a form of mechanical or electrical device, the real test being whether the warning given is sufficient and adequate and in operation at the time of the accident. Galveston H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247; 48 Tex.Jur.2d § 307; Cisco & N. E. Ry. Co. v. Wood, 244 S.W. 834 (Tex.Civ.App.,

err. dis'm); Texas and New Orleans Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901. It has been held that the mere presence of one whose several duties consist of that of flagman may not be enough under the circumstances there present. This point is particularly brought out in Cisco & N. E. Ry. Co. v. Wood (supra). In Southwest Stone Co. v. Symons, 237 S.W.2d 380 (Tex. Civ.App., wr. ref. n. r. e.), the court specifically stated that the duty with regard to hazardous crossings and negligence was to do what a reasonably prudent person would have done under the same or similar circumstances. In Missouri Pacific Railroad Company v. Rose, 380 S.W.2d 41 (Tex.Civ.App., ref. n. r. e.), the court held that the flasher system was not adequate and that the railroad was obligated, in addition, to supply a flagging system. See also Galveston H. & S. A. Ry. Co. v. Wells (supra), where the court stated that the rule to warn travelers at an extra-hazardous crossing is complied with if either mechanical or flagman type warning was sufficient to warn travelers of the dangers inherent to the use of the crossing. As heretofore stated, these cases also point out that whatever method is used, it must be adequate and working. In other words, a mechanical system must be adequate, or the flagman must be a person able to carry out his duties, and it is implied that he must not have any other duties if it detracts from his proper conduct of his job as flagman. Appellee cites two other cases from other jurisdictions where it was held that it was negligence to provide a flagman who was incapable of reasonably discharging his duties because of any physical disability or age. McNamara v. Chicago, R. I. & P. Ry. Co., 126 Mo.App. 152, 103 S.W. 1093; Ryan v. Louisiana Ry. & Nav. Co., 146 La. 40, 83 So. 371.

As stated, the jury in the case before us found the switchyard to be an extra-hazardous crossing, a finding which is amply supported in the evidence. The switchyard, being an extra-hazardous crossing, required the railroad to take such

steps as would be reasonably prudent in order to protect traffic at this crossing. As stated above, the railroad provided a flagman whose duties consisted not only of acting as flagman, but handling switches and passing signals to engineers. We do not believe this was reasonably prudent protection, and, in failing to so provide, the appellant was guilty of negligence, and such negligence was a proximate cause of appellee's injuries and damages. The jury found that an ordinarily prudent person, in the exercise of ordinary care, due to the conditions, if any, surrounding such crossing, would have had a flagman at said crossing whose only duty was to flag automobiles and foot traffic on such crossing, and that the appellant's failure to do so was a proximate cause of the injuries suffered by plaintiff, Federico Salazar; and further found that requiring its flagman to operate such switches, pass signals to the train engineer, and flag automobile traffic on Cotton Street, was negligence and a proximate cause of the injuries suffered by Federico Salazar. With these findings we agree.

For the above reasons, appellant's Points 1 through 8 are overruled.

■ In its Points of Error Nos. 9, 10, 11 and 12, the appellant contends that appellee's Special Issues 2, 3, and 4, inquiring whether the defendant was negligent in failing to provide a flagman at Cotton Street whose only duty was to flag automobile traffic, and whether such negligence was a proximate cause of the collision, is merely the submission of evidentiary issues and, although affirmatively answered by the jury, could not support the judgment, and insists that the controlling issues were whether or not the flagman, George Adkins, properly performed his duties as would a reasonably prudent person. Appellant levels the same complaint against Special Issues 7, 8 and 9, which issues inquire whether or not it was negligence, proximately causing the collision, to require the flagman to operate track switches and pass signals to the engineer at the same time he

attempted to flag traffic on Cotton Street. These issues were all answered "Yes" by the jury. We cannot agree with appellant's contention. We believe that these issues or questions inquire into the truth of material propositions of fact which constitute component elements of a ground of recovery or defense. Appellee pleaded that Cotton Street was an extra-hazardous crossing and that defendant was negligent in assigning a flagman or switchman the duties of signaling the train, working the switches, and serving as a flagman at the crossing, all at the same time, and that defendant was negligent in failing to place additional flagmen, a gate, or automatic warning device at such crossing. Appellee further pleaded that, had such been done prior to the collision, the collision would not have occurred; and therefore defendant was guilty of negligence in failing to have either an additional flagman, a gate, or automatic signaling device at such crossing. Appellant did not level any special exceptions to appellee's pleadings relating to matters contained in Special Issues 1, 2, 3, 4, 7, 8 and 9, to the effect that such matters did not constitute a cause of action, and further allowed appellee to offer evidence upon such matters. We feel that these issues were not evidentiary issues, but were controlling issues and necessary components to the cause of action. The Supreme Court has set this matter out very clearly in the case of Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, wherein the court states:

"A fair and commendable practice would be for the trial court to submit substantially the essential component elements of an issue. As an illustration, we will take a negligence case. As a general rule, in such a case the four component elements of the ultimate issue must be shown: (1) that the defendant did an act, (2) that the act was an act of negligence, (3) that the act of negligence was the proximate cause of the plaintiff's damage, and (4) that the plaintiff was damaged."

Appellant's Points 9, 10, 11 and 12 are therefore overruled.

■■■ Appellant's Points 13 through 20 complain that Special Issues 2, 3, 4, 7, 8 and 9 of the court's charge would not support a judgment for the reason that a failure to provide a flagman whose only duty was to flag automobile traffic, or the requirement by the railroad company that the flagman also operate track switches, pass signals to the engineer, as well as flag automobile traffic on Cotton Street, could not constitute negligence nor be a proximate cause of the collision as a matter of law. As we have stated, negligence is usually defined as the doing of something that a person of ordinary prudence would not have done under similar circumstances, or the failure to do something that a person of ordinary prudence would have done under the same or similar circumstances. Also, reference is made to the specific definition of negligence set out in Wichita Falls & Oklahoma Ry. Co. v. Pepper (supra). Summed up, negligence is simply failure to observe a legal duty. Here, it has already been established, we think, that the railroad company failed in its duty to use extraordinary means to warn traffic because this was an extra-hazardous crossing, and such failure was the proximate cause of the accident. Further, it must be pointed out that the jury specifically found that appellee did not fail to keep a proper lookout for his own safety, did not fail to apply his brakes at a time that a reasonably prudent person would have applied his brakes, and that he did not receive a proper warning prior to the collision. The jury, therefore, convicted the railroad of negligence and exonerated the appellee of any contributory negligence. Therefore, we feel that Issues 2, 3, 4, 7, 8 and 9 are adequate to support a judgment for the appellee, as the matters contained therein establish negligence and proximate cause of the collision. Appellant's Points 13 through 20 are therefore overruled.

Appellant's Point of Error No. 21 is overruled as the matter raised there has already been disposed of, and Issues 2, 3, 4, 7, 8 and 9 are not controlled by any other issues.

Appellant's Point of Error No. 22 is also overruled, as we find no material conflict with the jury findings.

Appellant's Points of Error 23 through 38 have already been disposed of, and are therefore overruled.

■ Appellant's Points 39 through 42 complain that the jury's findings with reference to Issues 2, 4, 7, 8 and 9 are against the great weight and preponderance of the evidence. We overrule these points as it is clear from the record, as appears from our previous statements in this opinion, that there is no merit in these points and that there was adequate evidence to support the answers to the issues mentioned.

■ Appellant's Points of Error 43 and 44 complain that Issues 2, 3, 4, 7, 8 and 9 are duplicitous and constitute a multiple submission of a single theory, and that the court erred in overruling appellant's motion to disregard the jury's findings and motion for judgment non obstante veredicto, and amended motion for new trial, on the ground that Issues 2–4 and 7–9 are duplicitous. We find no merit in these points, as each issue asks clear questions regarding an important component of a matter, and are therefore not duplicitous of the matter in controversy. These points are therefore overruled.

We find no error in appellant's Points 45 and 46, and same are overruled.

Appellant's Points of Error 47 through 57 all complain of the action of the court and jury in assessing the amount of damages and the manner of arriving at said amount. We overrule these points for the following reasons.

The issue as submitted is as follows:

## "QUESTION NO. 57

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, will fairly and reasonably compensate the Plaintiff, Federico Salazar, for his injuries, if any, directly and proximately caused by the collision in question, taking into consideration the following elements of damage and none other:

"(A) Such sum or sums of money, if any, as Federico Salazar has lost as a result of time lost from his business, if any, as a direct result of his injuries, if any, directly and proximately caused by the collision in question, from the date of said injuries, if any, down to the date of trial.

"(B) The present cash value of such sum or sums of money, if any, as Federico Salazar will in reasonable probability lose in the future beyond the date of his trial because of his disminished capacity to work and earn money in the future, if any, as a direct result of his injuries, if any, directly and proximately caused by the collision in question.

"(C) Physical pain and mental suffering, if any, suffered by Federico Salazar from the date of the collision to the date of his trial as a direct result of his injuries, if any, directly and proximately caused by the collision in question.

"(D) The present cash value of such physical pain and mental suffering, if any, which in reasonable probability Federico Salazar will suffer in the future, beyond the date of this trial, as a direct result of the injuries, if any, directly and proximately caused by the collision in question.

"You must not take into consideration in determining the amount of damages, if any, any physical pain and suffering, mental anguish, lost earnings, or lost earning capacity, either past or future, which is directly and proximately caused by any pre-existing disease, injury, infection, or bodily infirmity of the Plaintiff, except in so far as such pre-existing disease, injury, infection or bodily infirmity, if any, may have been aggravated by the Defendant's negligence, if any, on the occasion made the basis of this suit, if you have found that they have been aggravated.

"Answer by stating the amount, if any, in dollars, if any, and cents, if any.

"ANSWER: $200,668.00"

We have examined the record and have found voluminous evidence to support the elements of damages pleaded and alleged by appellee. It must be remembered that plaintiff lost an arm and suffered severe internal injuries. Documentary evidence such as income tax returns and profit and loss statements, are all in the record and show, to some extent, his loss of earnings and income. We have examined the cases cited by appellant and find that most of them are lacking in documentary evidence that plaintiff has here produced to show his loss of earnings and income. We feel that the record is amply adequate, from a documentary point of view, to show said loss of earnings and income as evidenced by the many exhibits. In addition, there is testimony from his treating doctor that he sustained a 95 per cent functional disability to his right extremity, or a 55 or 60 per cent disability to the body as a whole. As to future physical pain, appellee himself testified that the pain had continued from the time of the injury to the time of the trial, and his doctor testified that an injury like his was "quite painful", and that in amputations, other than just the traumatic experience and surgery, there is another type of pain which may linger on in various individuals for months and even sometimes for years afterward. It has always been peculiarly within the province of the jury to resolve

these matters and assess the amount of such damages. Arrington v. Paschall, 352 S.W.2d 866 (Tex.Civ.App., error ref., n. r. e.); Hunt v. Joske Bros. Co., 300 S.W. 201 (Tex.Civ.App., dis'm). As seen from the quoted issue, the court properly limited the jury's consideration of future damages to those which would "in reasonable probability be sustained by appellee in the future". See also English v. Hegi, 337 S.W.2d 860 (Tex.Civ.App., n. w. h.); Southern Pacific Railroad v. Montalvo, 397 F.2d 50 (5th Cir. 1968). Appellee urges that diminished earning capacity and future pain can be presumed in a case involving the traumatic amputation of the right arm of a right-handed man who operates a wholesale grain business and does most of the physical labor himself. On the basis of the record, which includes the age, earning capacity, etc., before and after the accident, along with pain and suffering, etc., we do not feel that the jury verdict of $200,688.00 was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Appellant's Points of Error 58 through 64 must be overruled for the following reasons. In these points appellant complains that the jury verdict was excessive, not supported by the evidence, tainted with passion and manifestly wrong and unjust, and that these matters can be inferred by the large size of the verdict; and that the court erred in refusing to order a remittitur. It has been held that in passing on whether a verdict is excessive, the evidence in support of the award must be viewed in the light most favorable to the award. Hill & Hill Truck Line v. Van Schoubroek, 233 S.W.2d 167 (Tex.Civ. App. n. w. h.); Green v. Rudsenske, 320 S.W.2d 228 (Tex.Civ.App. n. w. h.). Also, change in cost of living and purchasing power of the dollar should be considered. 17 Tex.Jur.2d § 334, p. 408. In 17 Tex. Jur.2d § 335, p. 410, the text points out that the enlightened, conscientious and fair judgment of the jury in the light of the evidence constitutes the sovereign test of a proper award of damages. We do not feel that the award here is excessive and, consequently, not subject to remittitur.

Appellant's Points of Error 65 through 67 deal with the appellee's closing arguments to the jury. We have studied these arguments and do not find that they offend the rules regarding jury argument in this type of case. While vigorous, we do not feel that the arguments inflame the passions of the jury or attempt to inform them of the effect of their answers. Rule 269, Texas Rules of Civil Procedure, expressly provides that counsel shall be required to confine argument strictly to the evidence and to the arguments of the opposing counsel. We do not believe this rule has been violated by the arguments here present. Appellant also complains that attorney for appellee accused appellant of having suborned perjury and further accused appellant of attempting to impeach its own witness, when the witness was not appellant's witness. With this contention we cannot agree, nor do we agree that the cumulative effect of the argument of appellee's attorney was calculated to and probably did cause the rendition of an improper verdict and judgment. Lastly, all of the objections made by appellant were sustained except the last objection. We have studied this argument and do not find reversible error therein.

Appellant's Points of Error 68 through 72 do not show error. These points are concerned with the appellant's allegation that the trial court erred, first, in refusing to permit defendant to offer into evidence portions of the J. M. Madrid deposition. This was not error, because Mr. Madrid did not admit that he was guilty of the theft with which he was charged. It has been held that proof of a mere charge or indictment of an offense involving moral turpitude may be shown only when a witness presently admits that he is guilty of the offense. 62

Tex.Jur.2d § 279, pp. 260–263; Christie v. Brewer, 374 S.W.2d 908 (Tex.Civ.App., err. ref. n. r. e.). Here, the witness Jose M. Madrid testified that he was erroneously accused of theft, and no evidence was introduced that he had been convicted of the offense. Appellant also complains that the court erred in refusing to allow appellant to offer into evidence testimony of Robert E. Eiland. We find no error here, as the bill of exceptions shows that his testimony was based largely on hearsay evidence, and exhibited a lack of personal knowledge of the investigation he purported to testify about. It is also obvious that had the Madrid testimony regarding having been fired on accusation of theft been admitted, it would have created improper bias and prejudice. Points 68 through 72 are overuled.

Appellant's Points of Error 73 through 76 complain of the court's refusal to allow appellant to reopen the case in order to offer additional testimony. These points must be overruled, because we do not see how appellant could have been injured by the court's action. In the first place, appellant wished to offer evidence as to whether or not Harry Cecil was at the scene of the accident on the night in question, which appears to be a collateral issue and an attempt on the part of the appellant to reopen the case in an attempt to bolster the position of the witness. It further appears from the record that appellant had had opportunity to develop the matter before the close of the case. We do not find error in appellant's Point 76, wherein it charges the court with error in overruling appellant's amended motion for new trial on the ground of the court's alleged prejudicial error and abuse of discretion in refusing to permit appellant to reopen.

Appellant's last point, No. 77, simply asserts that the cumulative effect of all errors amounted to a denial of the appellant's right to a fair trial, and probably caused the rendition of an improper and excessive verdict and judgment. This point is overruled.

All of appellant's points of error are accordingly overruled, and the judgment of the trial court is affirmed.