**TEXAS CONSOLIDATED TRANSPORTATION COMPANY, Appellant,**

v.

**Mrs. Halla EUBANKS et al., Appellees.**

No. 3793.

Court of Civil Appeals of Texas.

Waco.

Nov. 10, 1960.

Rehearing Denied Dec. 1, 1960.

Lewright, Dyer & Redford, James Wray, Jr., Corpus Christi, for appellant.

Hill, Brown, Kronzer & Abraham, Helm, Jones, McDermott & Pletcher, Arterbury, Hoover & Graham, Houston, for appellees.

TIREY, Justice.

This is a negligence case growing out of a collision of a truck of appellant with a locomotive of the Missouri Pacific Railroad Company. Appellees are the surviving wife and daughter of W. G. Eubanks, the engineer who lost his life as a result of the collision. Pertinent to this discussion all issues were answered by the jury favorable to the appellees and the jury awarded to Mrs. Eubanks the sum of $125,-000, and to their thirteen year old daughter, Billie Margie Eubanks, the sum of $37,500. The jury acquitted the railroad and its employees of all responsibility for the accident. The judgment followed the verdict. The transportation company seasonably filed its motion for new trial and, it being overruled, perfected its appeal to the Houston Court of Civil Appeals, and the cause is here on transfer. The judg-

ment is assailed on what appellant designates as three Points; they are substantially to the effect that the jury's awards of $125,000 in favor of Mrs. Eubanks and $37,500 in favor of the daughter, making a total of $162,500, are grossly excessive and not supported by any evidence; that the evidence is insufficient to support the rendition of these excessive amounts; that such amounts in each instance are against the overwhelming preponderance and weight of the evidence, and that the award in each instance was the result of bias, prejudice and passion on the part of the jury against the appellant.

A statement is necessary. As above stated, appellees grounded their action under the Wrongful Death Statute, Article 4671 et seq., against Texas Consolidated Transportation Company, and against Missouri Pacific Railroad Company under the Federal Employers' Liability Act, Section 1, as amended, 45 U.S.C.A. § 51. W. G. Eubanks met his death on the 25th day of June, 1957, and judgment was entered on the 10th day of March 1960 in favor of appellees. No judgment was entered against the Railroad Company and this appeal is solely by the transportation company. W. G. Eubanks was born October 8, 1893, and had been in the employ of the railroad since 1916, and had served the last 20 years as a freight engineer, and was so serving at the time of the accident that resulted in his death. His wife was 57 years of age at the time of his death and they had been married almost 40 years, and their daughter was in her 13th year. Mrs. Eubanks' life expectancy was longer than that of her husband's. Mr. Eubanks' earnings were $4,376.29 from January 1, 1957 to June 25, 1957, the date of his death. On this basis over a 12 months' period his salary amounted to $9,076.87 per annum. Mr. Eubanks, at the time of his death, was in excellent health; he was very erect—his walk was brisk, and he looked and was well. There were no compulsory retirement regulations in force by the railroad company, and there were many employees 70 years of age running locomotives. Testimony was tendered to the effect that Mr. Eubanks weighed about 180 pounds; that he was alert and conscientious; that he looked happy because he was happy, and that he did enjoy his work very much; that he had no idea of retiring and that he was looking forward to being a passenger engineer; that he was very good about everything around the home; that what he couldn't do himself he had done; that he was generous with his wife and daughter; that they did not need or want for anything; that he was frugal about what he spent on himself, and that he was not extravagant; that his family came first and that he was economical, and that he bought good things when he bought, but that he didn't buy a great many things; that he maintained a home for his wife and daughter; that he loved his daughter more than anything, and that she loved him very much. The daughter testified to the effect that she was a "tomboy" and a "daddy girl"; that they got along very well, and that he spent much time with her and would go over things that you might want to talk about; that he had much patience and took time to listen to her; that if he had something to say he would say it but he wasn't of the blusterous type but was quiet and easy-going; that he was careful in his advice that he gave to her and would point out her mistakes and would tell her what his decision was and then how to correct such mistakes; that she and her father were very close and that "he loved me and I loved and admired him very much;" that when he came in "off the road" he would always bring me candy or a toy or something and that we got along well together; that she belonged to the Camp Fire Girls and when they would have a "dad and daughter box supper" that her father would accompany her on these occasions; that her father took a lot of pride in working in the yard and keeping it trimmed and keeping the grass cut, and that she helped him with these jobs.

The sole question before us: Is the verdict excessive? First of all, the Court of Civil Appeals may not remand or grant a new trial based solely on the claim that the verdict is excessive. If the Court of Civil Appeals is of the view that the verdict is excessive, its duty is clearly defined in Rule 440 Texas Rules of Civil Procedure. See also Carter v. Texarkana Bus Company, 156 Tex. 285, 295 S.W.2d 653; Missouri Pac. R. Co. v. Kimbrell, Tex.Civ. App., 326 S.W.2d 720; Id., Tex., 334 S.W. 2d 283. See also statement of the Rule, Adams v. Houston Lighting & Power Company, 158 Tex. 551, 314 S.W.2d 826.

Let us consider first the award to Mrs. Eubanks. In so doing, we must look very closely to the charge of the court, and the instruction there given as to what the jury could and could not consider in making its award. The issue presenting this matter, absent the burden of proof clause, is substantially to the effect: What amount of money would, if paid now in cash, reasonably compensate Mrs. Eubanks for the loss sustained by her as a result of the death of her husband? The Court instructed the jury:

"* * * that you may take into consideration and allow her whatever sum of money as, if paid now, would represent the fair value of what the plaintiff, Mrs. Halla Eubanks, had in reasonable probability a right to expect under the circumstances to receive from the earnings of her husband. In determining the amount, if any, you will allow her, you may consider the earnings and earning capacity, if any, of her husband, at the time of his death, his age and the condition of his health. In this connection, however, you are instructed that in arriving at and allowing damages, if any, to Mrs. Halla Eubanks, * * * you must not take into consideration or allow her any sum as compensation for her grief, loss of companionship, loss of affection, and bereavement, mental anguish or pain suffered by her by reason of the death of her husband, but you can allow her only such damages, if any, as result in a pecuniary loss to her occasioned by his death. But you may take into consideration loss of services, if any, and care and counsel, if any, that the plaintiff would, if she would have, in reasonable probability received from her husband during his lifetime had he lived, but in this connection you can allow her only such damages, if any, as in reasonable probability resulted in pecuniary loss to her by reason of the death of her husband."

Bearing in mind that Mr. Eubanks was in his 63rd year at the time of his death, and that he and Mrs. Eubanks had been married one time only and that to each other; that she had been well provided for and that Mr. Eubanks was earning a little more than $9,000 per year, and that his health was good and that he had a life expectancy of 13.91 years, is the award to her of $125,-000 excessive? First of all, we are dealing with a man who was well and strong, and who was gainfully employed. It was stipulated that the life expectancy of a man of the age of Mr. Eubanks was 13.91 years under the 1949–1950–1951 U. S. Life Tables, and under the testimony the jury would have a right to believe that Mr. Eubanks would have lived beyond the expectancy of 13.91 years. Going back to the instructions in the charge, if the jury were of the view that Mr. Eubanks, but for his injuries resulting in his death, would have lived some years longer than his expectancy, and if they had further believed his services, care and counsel to his wife would have had some material value, it had a right to award such sum as it thought would be fair and reasonable as compensation for this loss, and the jury's estimate and award are not shown here to have been improperly found. It was the jury's duty to consider all of the evidence tendered as to the pecuniary loss sustained by Mrs. Eubanks under this Court's charge, and to award to her

such damages as it thought would compensate her for her loss under the instructions given to it by the Court. See Dallas Ry. & Terminal Co. v. Tucker, Tex.Civ. App., 280 S.W.2d 600, n. r. e.; Thompson v. Brown, Tex.Civ.App., 222 S.W.2d 442, Point 15, n. w. h.; Louisiana & A. Ry. Co. v. Chapin, Tex.Civ.App., 225 S.W.2d 614, w. ref., and Hemsell v. Summers, Tex.Civ. App., 138 S.W.2d 865, n. w. h. See also Vicksburg & M. R. Co. v. Putnam, 1886, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257. Does the award show bias or prejudice? We think the answer is "No." There is no complaint as to any improper or harmful evidence, and there is no complaint as to any improper or harmful argument made to the jury. Here the jury is dealing with an undisputed factual situation that is typical of our American way of life—the father enjoying good health and gainfully employed and maintaining a home for his wife and daughter. It is true that the award is large, but the question here before us is one peculiarly within the province of the jury. It is our view that the best general statement of the Rule has been made by our Texarkana Court in the Chapin case, supra [225 S.W.2d 616]. There we find this statement:

"The statute in such cases provides that for wrongful injuries resulting in death 'the jury may give such damages as they think proportionate to the injury resulting from such death.' Art. 4677, R.S. The difficulties of proof in such matters are well known to the legal profession. No rule is prescribed for making the calculations. Exact ascertainment is obviously not possible. Juries from their own knowledge, experience and sense of justice are called upon to fix the compensation with reference as far as possible to conditions existing at the time of death. They are not to be influenced by passion or prejudice. The jury's estimate is not defined, but any estimate of the court is likewise undefined. The judgment of the jury is as good as that of the court,

and it should prevail unless it appears that the verdict is influenced by passion or prejudice and is not the result of honest convictions."

Since the Supreme Court refused a writ in the foregoing case, the opinion is on equal footing with decisions of that Court, and the Supreme Court has not seen fit to change the Rule there stated. Moreover, the Beaumont Court, in Wells v. Henderson, Tex.Civ.App., 78 S.W.2d 683, w. ref., in considering a wrongful death action, stated substantially that ordinarily the amount of damages to which a party is entitled is primarily and peculiarly within the province of the jury, and in the absence of a showing that passion, prejudice or other improper motive influenced the jury in assessing the damages, the amount assessed by them will not be set aside as excessive. This doctrine was applied in Green v. Rudsenske, Tex.Civ.App., 320 S. W.2d 228, and cases there cited. Needless to say that it is well settled that in determining whether or not a verdict is excessive, the evidence in support of the award must be viewed in the light most favorable to the award. See cases collated in Rudsenske, supra. See also Thompson v. Robbins, Tex.Civ.App., 297 S.W.2d 247, affirmed by Supreme Court 157 Tex. 463, 304 S.W.2d 111. Perhaps we should say that the jury had before it affirmative testimony of Mr. Eubanks' good health and maternal longevity, and in addition to that, testimony to the effect that medical science is constantly improving the life span, and that life expectancy tables are outdated when published. Moreover, we think the Rule is well settled that the jury was not bound to measure either the working or natural life of Mr. Eubanks by the mortality tables. We do not believe that the appellant has carried its burden of showing that the award by the jury is the result of either passion or prejudice. Nor do we think appellant has shown that the award here is so against the great weight and preponderance of the evidence as to be manifestly unjust under the doctrine an-

nounced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Is the award of $37,500 to the daughter excessive? The issue with reference to the damages sustained by the daughter is substantially, omitting the burden of proof clause: What sum of money would, if paid now in cash, reasonably compensate Billie Margie Eubanks for the loss sustained by her as the result of the death of her father? The court instructed the jury to the effect:

"* * * that you may take into consideration and allow Billie Margie Eubanks whatever sum of money, if any, if paid now, as would represent the fair and reasonable value of what the deceased, W. G. Eubanks, would in reasonable probability have contributed to her support, education and maintenance during her minority. In determining the amount, if any, you may consider the earnings of said W. G. Eubanks, at the time of his death, his age and the condition of his health, as well as the value, if any, from a pecuniary standpoint only, of his care, nurture, and guidance. In this connection, however, you are instructed that in arriving at and allowing damages, if any, to Billie Margie Eubanks, you must not take into consideration or allow her any sum whatever as compensation for her grief, loss of companionship, loss of affection, and bereavement, mental anguish, or pain suffered by Billie Margie Eubanks by reason of the death of W. G. Eubanks, but you can allow to her only such damages, if any, as resulted in a pecuniary loss occasioned by the death of the said W. G. Eubanks."

Here again we are dealing with an undisputed factual situation where the father, in good health, and gainfully employed, and providing for and supporting his daughter in a maner that is typical of our American way of life. The Court instructed the jury to the effect that in de-termining the amount to be awarded to the daughter that it may consider the earnings of the father at the time of his death, his age and the condition of his health, as well as the value, if any, from a pecuniary standpoint only of his care, nurture and guidance, and that the jury could allow her only such damages as resulted in the pecuniary loss occasioned by the death of her father. We find nothing in the record to indicate that there was prejudice or bias on the part of the jury in making this award. Nor do we think appellant has shown that the award here is so against the great weight and preponderance of the evidence as to be manifestly unjust under the doctrine announced in In re King's Estate, supra. It is now well settled in Texas that in wrongful death actions that a minor suing for the death of her parent can recover what he or she might reasonably expect to receive beyond, during and after majority, notwithstanding the absence of the special conditions of infirmity on the part of the minor. See Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 79 S.W.2d 623, 91 S.W.2d 1052. Our Supreme Court has not seen fit to change the foregoing Rule. It is without dispute that the father was generous with his daughter and she had a right to expect that his generosity would continue so long as he was gainfully employed. But appellant, in his brief, says:

"There are two factors to be considered in determining whether this award is excessive. The first is the present value of the pecuniary contribution which Mrs. Eubanks and her daughter could have reasonably expected to receive from Mr. Eubanks throughout his remaining years of gainful employment. The second factor as to Mrs. Eubanks is the pecuniary value of the 'loss of services' and 'care and counsel' which she would have received from her husband during the remainder of his lifetime. * * * As to Billie Margie Eubanks, this second item was defined by the Court as being 'the value, if any, from a pecuniary stand-

point only, of his care, nurture and guidance'. * * *

"At the time of his death, W. G. Eubanks was earning $9,076.86 per annum. There is no testimony how much of this was 'take home pay'. However, the Federal income rate has remained constant for the years 1957 through 1960, and the only reasonable assumption that can be made is that it would have remained constant during the remaining period of Eubanks' work-life expectancy. The number of his exemptions is known and predictable and, in the absence of other proof, we are entitled to assume standard deductions."

The foregoing theory has been decided adversely to appellant's contention in Texas & N. O. R. Co. v. Pool, Tex.Civ.App., 263 S.W.2d 582, point 13, page 591, n.w.h. See also Dallas Ry. & Terminal Co. v. Tucker, supra; Missouri-Kansas-Texas R. Co. of Texas v. McFerrin, Tex.Civ.App., 279 S.W.2d 410, reversed 156 Tex. 69, 291 S.W.2d 931; John F. Buckner & Sons v. Allen, Tex.Civ.App., 289 S.W.2d 387; Shipman, "Income Tax Aspects of Personal Injury Litigation", 37 Tex.L.Rev. 77; 63 A.L.R.2d 1394; 46 A.B.A. 276. As we understand the Rule in Texas as to discount rates our Courts have consistently held that the extent to which a jury is required to reduce the award is a matter singularly within their province; that they have resisted efforts to require that the jury be further instructed as to the meaning of the terms "If paid now in cash", and "Present cash value." See Missouri Pac. R. Co. v. Kimbrell, supra, and Houston Belt & Terminal Ry. Company v. Davis, Tex.Civ.App.1929, 19 S.W.2d 77–80–81, w. ref.

Again, appellant in its brief says:

"Giving the jury the greatest latitude in determining the pecuniary value of Mr. Eubanks' services, care and counsel to his wife, it would seem that to allow the sum of $5,000.00 for this item of damages would be more than generous. A sum in excess thereof under the evidence, would be purest speculation. Therefore, we concluse that the maximum justifiable award to Mrs. Halla Eubanks would be $48,592.-42, a previously calculated maximum present value of the expected financial support plus $5,000.00 for loss of support, care and counsel, a total of $53,592.42.

"The testimony concerning the pecuniary loss to Billie Margie Eubanks by reason of the loss of 'care, nurture and guidance' is only slightly more detailed than that concerning her mother. * * *

"If we reasonably allow a recovery to Billie Margie Eubanks of $3,000.-00, we will certainly have allowed the maximum compensation reasonably permissible under the evidence for the pecuniary loss suffered by reason of her being deprived of her father's 'care, nurture and guidance.'

"This sum added to the $13,963.77 calculated as the present value of her loss of financial support of her father yields the sum $16,463.77, and leads to the conclusion that the award made to her of $37,500.00 is in excess of the maximum justifiably allowable by the sum of $21,036.23."

Finally, appellant, in his brief, says that the verdict of the jury is excessive by the amount of $91,500. It is our view that appellant's conclusion is not in harmony with the record or the applicable legal principles here controlling. Appellant fails to take into account that income taxes are not deductible; that he is dealing with the intangibles, such as services, advice and counsel for the wife, and nurture, care, education and guidance of the daughter. These matters have value in addition to the expected financial contributions. It is al-

ways difficult to estimate in money the value of such as services, advice and counsel to the wife, as well as the value of the nurture, care, education and guidance to the daughter. The law has entrusted that duty to the juries in these death cases. Here there is no claim or proof that the jury was actuated by bias, prejudice or other improper motive, unless we can say that the size of the verdict alone shows bias or prejudice; and there is no claim here nor in the trial court that counsel for appellees by argument or otherwise, injected any improper matter before the jury by side remarks, or otherwise that in any manner caused the jury to deviate from its honest convictions. Moreover, the appellate court cannot substitute its findings for that of the jury, but on the contrary, it is its duty to view the evidence in the light most favorable to the findings of the jury. We have previously stated that the life expectancy tables were not binding on the jury, particularly in view of the testimony concerning Mr. Eubanks' health, habits and maternal longevity, and the medical testimony affirmatively establishing the improvement in the life span annually being made by medical science, nor was the jury bound to accept appellant's estimate of the decedent's "work life expectancy", particularly in the light of the testimony and the record as a whole, nor was the jury bound to accept a figure analyzing the decedent's wages for a period of six months prior to the accident, but, to the contrary, could, and probably did accept the testimony of engineer Kirk covering a much more substantial period of time than that disclosed by the stipulation as to wages, nor was the jury bound to accept and apply the "discount rates" of Irving Adams' attorney. Opinion testimony does not establish any material fact as a matter of law. See Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345. In Texas &

Pac. Ry. Co. v. Riley, Tex.Civ.App., 183 S.W.2d 991, 995, w. ref., certiorari denied 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991, we find this statement:

"* * * there may be a recovery for the value of the services which the deceased might and would have rendered in training and educating his children. It is always difficult to estimate in money the value of such services. The law has intrusted that duty to the juries, * * *."

In Missouri Pac. R. Co. v. Kimbrell, supra, 334 S.W.2d 283, 286, we find this statement by the Supreme Court:

"It is a well-settled rule in this jurisdiction that the jury has the power to consider as proven any matter that is of common knowledge in the community."

Under the foregoing doctrine, the jury was entitled to consider, and undoubtedly did, the ever-decreasing value of the dollar. We have previously stated that the jury was not required to reduce the awards based upon a computation of federal income tax liability projected over the life expectancy of the decedent.

We have given this record our most careful consideration, and we are of the view that the verdict is fully supported. See Hines v. Mills, Tex.Civ.App., 218 S.W. 777, w. dis.; Texas & N. O. R. Co. v. Harrington, Tex.Civ.App., 241 S.W. 250; Baker v. Fields, Tex.Civ.App., 236 S.W. 170; Beaumont, S. L. & W. R. Co. v. Sterling, Tex.Civ.App., 260 S.W. 320; Gulf States Utilities Co. v. Moore, Tex.Civ.App., 73 S.W.2d 941; Gulf, C. & S. F. R. Co. v. Carpenter, Tex.Civ.App., 201 S.W. 270; Burlington-Rock Island R. Co. v. Davis, Tex.Civ.App., 123 S.W.2d 1002. The judgment of the trial court is affirmed.