**BELL AEROSPACE CORPORATION,
Appellant,**

v.

**Agene L. ANDERSON, Individually and as
Next Friend of Laura Ann Anderson,
et al., Appellees.**

**No. 6181.**

Court of Civil Appeals of Texas,
El Paso.

Feb. 23, 1972.

Rehearing Denied March 29, 1972.

Scott, Hulse, Marshall & Feuille, J. F. Hulse, Charles R. Jones, El Paso, for appellant.

Kemp, Smith, White, Duncan & Hammond, William Duncan, Jack Ratliff, El Paso, for appellees.

## OPINION

RAMSEY, Chief Justice.

This is a products liability case. Agene L. Anderson, individually and as next friend of her minor children, Plaintiffs-Appellees, brought suit against Bell Aerospace Corporation, Defendant-Appellant, for damages resulting from the death of her husband, Major Robert L. Anderson, who was the father of their minor children. The jury awarded damages in the amount of $600,000.00 and judgment was entered by the trial Court for $481,255.00, being the amount prayed for by Plaintiffs. We affirm.

The deceased, Robert L. Anderson, was a Major in the U. S. Army and a helicopter pilot. He received a helicopter from the Defendant at Fort Worth, Texas, for the purpose of ferrying it to California. He left Fort Worth at approximately 11:00 o'clock, A.M., on November 9, 1965, and at approximately 12:15 o'clock, P.M., on the same date, the plane crashed near Morgan Mill, Texas, resulting in Anderson's death. Witnesses in the vicinity of the crash described it as occurring in foggy weather, with the helicopter exploding or disintegrating before plummeting to the ground.

Plaintiffs' theory of the cause of the accident was that "mast bumping" was initiated by failure of a wire drive in the servo mechanism, which in turn caused the mast to be "knocked out of round" and broken in half, thereby allowing the main rotor blade to slice into the fuselage and causing the explosion and subsequent crash. Defendant's theory was that the crash was caused by pilot error, and disregarding such error, that there was no evidence or insufficient evidence to support the Plaintiffs' theory that the wire drive had failed particularly since the wire drive on the mechanism containing it was never produced during the trial.

Thirty-three special issues were submitted. The jury found that the wire drive in the helicopter was in a defective condition when delivered; that the wire drive was unreasonably dangerous when delivered which was a proximate cause of death; that Defendant's failure to provide a dual spool or redundancy system in the servo rendered the helicopter unreasonably dangerous which was a proximate cause of death; that the main rotor mast was in a defective condition when delivered and was unreasonably dangerous and a proximate cause of death; that the deceased was not flying in instrument flight rule conditions; that the deceased did not permit the aircraft to enter an unusual attitude and there was no negligence as to the aircraft's attitude; that the deceased did not permit the aircraft to enter flight conditions in excess of its operational limitations and that the deceased did not fly into weather conditions for which he was not qualified.

Defendant assigns eighty-three points of error. Points of error numbered 1 through 12 are "no evidence" and "insufficient evidence" points relating to the alleged defectively manufactured and designed parts of the aircraft and dangerous qualities attributable by Plaintiffs' allegations. Points of error numbered 13 through 23 complain of the insufficiency of the evidence to raise an issue of defectiveness in either manufacture or design so as to sustain the Court's judgment against the Defendant. Points of error numbered 56 through 73 complain that the Court's judgment, based on the jury's findings, is so contrary to the great weight and preponderance of the evidence that it is manifestly wrong and unjust. These points of error assigned by the Defendant challenge not only the existence of any evidence, but also the sufficiency as well as the necessary probative force to support the findings of the jury on the questions presented. These points of error will be so considered.

The basic rule for considering "no evidence" and "insufficient evidence" points of error is contained in the article of Robert W. Calvert, 38 Tex.Law Rev. 361. In deciding "no evidence" points, the reviewing Court should view the evidence in its most favorable light in support of the finding of fact, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences to the contrary. In considering "insufficient evidence" points, the entire record must be considered, and such points sustained if the evidence is factually insufficient to support a finding or if the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. It is the duty of this Court to consider the "no evidence" points first.

Much of the evidence surrounding the crash is undisputed. The aircraft was new, having been received by the deceased from the Defendant the same morning of the crash. The crash occurred only about an hour and fifteen minutes after the deceased departed from Fort Worth. Weather conditions at Fort Worth were good. Foggy conditions prevailed at Morgan Mill with visibility limited from one-fourth to one-half mile. Two witnesses observed the aircraft just prior to the crash. One witness, Troy A. Medford, a garageman, noticed the aircraft as he went to lunch. His attention was attracted to it in that it was very low, just above the tree tops, making a real heavy, uneven sound like it was "running in spurts." Medford described it as an "unregular sound," and different from any helicopter that he had heard. The aircraft approached from the northeast and was within 300 to 400 yards from him. By that time, Mr. Medford was on his front porch and heard a boom. The interval of time elapsing was the time it took for Medford to walk from the middle of the street to his front door.

Another witness, Allen Fulks, a farmer, was tending his livestock when the helicopter first appeared. He testified that the aircraft broke through the fog where he was, then lifted up and went off in a northerly direction, and went out of hearing distance. Fulks walked to the top of a hill and the helicopter returned and was nearly directly over him. He thought the helicopter was going to land. Fulks testified that the aircraft was going south. He testified that the aircraft went a few yards south and then exploded in the air and crashed. He testified that the helicopter was traveling at a slow rate of speed. As to the attitude of the aircraft when Fulks first saw it, he described it as "upright," "normal," and "not tilted at any severe angle."

A thorough and detailed examination was made of the wreckage. Defendant's employees and Army personnel testified as to the physical facts at the scene of the crash and presented numerous exhibits and technical data to the jury together with detailed drawings showing the location of the scattered wreckage found at the scene of the crash. The ultimate conclusions based upon the evidence introduced resolved themselves to the propositions that while the craft was in flight, the mast had struck back and forth against the stops thereby knocking the mast out of round and causing it to break which then caused the main rotor blade to cut into the fuselage thereby causing the fire and explosion resulting in the crash. Thus, the basic controversy resulted, being the cause of the mast bumping. The Defendant contends that it was pilot error and the Plaintiffs contend that a broken wire drive was the cause. Causation presents the principal problem.

Defendant's chief design engineer testified that the mast bumping could be caused by pilot error in placing the helicopter in an unusual attitude. He also testified that the failure of the wire drive could be a cause. Further testimony was introduced not only by this witness but also by testimony from Defendant's project engineer and Defendant's assistant project engineer relating to bumping and breaking of the mast and the improbability of such occur-

rence in normal flight, or within thirty degrees thereof. Defendant's test pilot also testified that he did not know of anything a pilot could do "in any semblance of normal" that would bump or break the mast. To induce mast bumping, the test pilot agreed that the pilot would have to·do something very abnormal or unusual.

The basic allegation to sustain Plaintiffs' cause of action related to a wire drive in the servo mechanism of the aircraft. The servo mechanism was described as similar to the steering mechanism of an automobile. This part of the aircraft was not available at the trial. Various inquiries of the witnesses did not definitely explain its absence. One of the Defendant's witnesses testified that the mechanism was destroyed by fire following the crash. Another witness, a civilian employee of the Army working at Defendant's plant in Fort Worth, did not remember whether or not anyone looked for it but believed the Defendant's laboratory reviewed the servo mechanism removed from the aircraft. Defendant's assistant project engineer, when questioned, did not remember looking for the servo mechanism and did not remember whether or not it was consumed by fire. Defendant's project engineer stated that he had not heard of anyone who had seen the wire drive and he did not know whether it was destroyed in the crash or what happened to it. The wire drive and servo mechanism forms an integral part of the control system of the aircraft. The missing mechanism was unquestionably an important part of the aircraft to check in determining the cause of the crash.

The Plaintiffs called Mr. Frank Gerald Andrews as an expert witness. He described his occupation as an aviation safety consultant. He was formerly employed as an Aviation Safety Engineer for the Boeing Company in Seattle and had been engaged in safety and accident investigations for some twenty-five years. He was also formerly employed by the University of Southern California as head of the Ci-

vilian Aviation Accident Prevention and Investigation Division and had written a text on accident investigation and reporting. He had also served in accident research and investigation with government agencies and had logged some 14,000 hours as a pilot. He was also a flight instructor. His experience had been principally in connection with fixed wing aircraft rather than helicopters. Mr. Andrews' opinion as to causation was the failure of the wire drive. He agreed, however, that it could have been pilot error.

Defendant called as a witness, George W. West, whose background and training as a helicopter pilot and accident investigation and reconstruction was quite impressive. His participation in the investigation lasted for some thirty (30) days. He was a member of the Accident Investigation Board appointed by the Commanding Officer of Ft. Wolters to investigate the accident.

Mr. West testified that in his opinion, the failure of the aircraft resulted from dynamic over-stress which was precipitated by pilot induced control input, yet, his opinion was qualified by the additional observation, "remembering, however, that there were certain components that were destroyed by fire that we were unable to examine . . . ". Therefore, his opinion as to pilot error was premised on the assumption that there was no control failure. He further testified that in any aircraft accident, the control system is a matter of importance to consider. Mr.· West agreed that there were only two possible conclusions as to causation, namely, pilot error or the wire drive mechanism. His opinion was pilot error.

■■■ Thus, each expert agrees that there are two possible theories of causation. Either cause could lead to the chain of events resulting in the explosion and crash. Thus, there are two inferences present as to causation. If there is no direct evidence as to the existence of an ultimate fact and the evidence presented be

consistent with either of two theories and there is nothing to show that one rather than the other is proven, then neither is proven. Republic National Life Insurance Company v. Bullard, Tex.Civ.App., 399 S. W.2d 376 (n. r. e.). A verdict may be based on inferences fairly drawn from the facts in evidence. An inference cannot be based on surmise or speculation and is without probative force if inconsistent with undisputed or clearly established facts. 32A C.J.S. Evidence § 1044, p. 823, Firestone v. Sims et al., Tex.Civ.App., 174 S. W.2d 279 (writ ref.). However, an inference may not be based on another inference. Briones et vir v. Levine's Department Store, Inc., 446 S.W.2d 7 (Tex.1969). It is well settled that a defect may be proved by circumstantial evidence. Darryl et ux. v. Ford Motor Company, 440 S.W.2d 630 (Tex.1969).

■ It is incumbent upon the Plaintiffs to prove that the aircraft was defective at the time Defendant delivered it. Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262 (Tex.1967); Pittsburg Coca-Cola Bottling Works of Pittsburg v. Ponder, 443 S.W.2d 546 (Tex.1969). At the same time, it is not essential that the specific defect be identified. Coca Cola Bottling Company of Houston v. Hobart et al., Tex.Civ.App., 423 S.W.2d 118 (Ref. n. r. e.); Sharp v. Chrysler Corporation et al., 432 S.W.2d 131 (Ref. n. r. e.); Ford Motor Company v. Grimes, 408 S.W.2d 313 (dismissed, writ ref.).

■ Testimony was introduced as to the deceased's experience and ability as a pilot. The facts were unquestionable that the deceased received the aircraft less than two hours prior to the crash. The explosion or disintegration of the aircraft occurred in mid-air so that any defect could not be caused by the crash. The main rotor came off, cutting into the aircraft causing the explosion and crash. The main rotor came off due to the fact that the mast supporting it bumped against the stops, causing the hollow mast to be knocked out of round resulting in its breaking. Defendant's employees, who testified, stated that if the aircraft was level in flight, it would be most unlikely and almost impossible for the pilot to sever the mast. Another of Defendant's employees stated that if the aircraft was within thirty degrees of vertical, then in normal flight conditions, there was no way the pilot could cause the craft to explode.

The proof in this case depended on circumstantial evidence. However, as the Court stated in Musslewhite v. Allen, Tex. Civ.App., 127 S.W.2d 970 (n. w. h.) :

" . . . . the rule seems to be well established in this state that, where a party relies upon circumstantial evidence to establish his cause of action, or his defense, it is only necessary that said fact be established to the satisfaction of the jury by a preponderance of the evidence, whether same be circumstantial or otherwise." (Citing Buro v. Home Benefit Ass'n. (Tex.Civ.App.) 28 S.W.2d 902, 905 (dismissed)). See also Duke et al. v. Houston Oil Co. of Texas et al, 128 S.W.2d 480 (dismissed).

It is also settled that an ultimate fact may be proved wholly by circumstantial evidence. Buchanan v. American National Insurance Company, Tex.Civ.App., 446 S. W.2d 384 (Ref. n. r. e.); Azores v. Samson, Tex.Civ.App., 434 S.W.2d 401 (n. w. h.).

Sufficient evidence is included in the record supporting the inference that a malfunction of the wire drive was the cause of the fatal crash. Further, we conclude, viewing the record in its entirety, that there is more than sufficient evidence of probative force to support the jury findings. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. As Chief Justice Calvert of the Texas Supreme Court stated in 38 Texas Law Review at p. 367 :

"If there is evidence of probative force tending to prove the existence of a vital fact and evidence tending to disprove its

existence and the point of error is that the finding is against the great weight and preponderance of the evidence, the rule by which a Court of Civil Appeals should be guided in passing on the point is simple even if the conclusion to be reached in a particular case is difficult. If the finding of the existence of the fact, considering all of the evidence, is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, the court should sustain the point and order a new trial; otherwise, the court should overrule the point and affirm." (Citing Missouri Pac. Ry. Co. v. Somers, 78 Tex. 439, 14 S.W. 779 (1890); 30 Texas L. Rev. 803). See also Garza et al. v. Alviar et al., 395 S.W.2d 821 (Sup.Ct. 1965); McMillen Feeds, Inc. of Texas et al. v. Harlow, Tex.Civ.App., 405 S.W.2d 123 (Ref. n. r. e.).

Defendant's points of error 1 through 23 and 56 through 73 are overruled.

By points of error numbered 24 through 36, Defendant complains of the testimony of Plaintiffs' expert witness, Mr. Andrews, contending such testimony was based on conversations the witness had with others and, therefore, hearsay; that other testimony was based upon conjecture, and that the witness's expertise in several technical areas was lacking, and, therefore, rendered him unqualified to testify on such matters. Defendant further contends that the showing of a motion picture film demonstrating how the lateral servos on a UH–1d helicopter work, was not made under substantially similar conditions as those existing at the time of the accident.

■ The record contains sufficient evidence that Plaintiffs' expert witness was qualified. His background and qualifications have been discussed. The trial Court so held and we agree. The receipt of such testimony must be left largely to the discretion of the trial Judge. In the absence of a clear abuse of discretion, such ruling should not be disturbed. We find no abuse

of discretion. 23 Tex.Jur.2d, Sec. 411, p. 615; Urquhart v. Barnes, et al., Tex.Civ. App., 335 S.W.2d 666 (n. w. h.); McCormick and Ray, Texas Practice, Evidence, Vol. 2, Sec. 1401, p. 235. Defendant's points of error 24, 28, 29, 30, and 32 through 36 are overruled.

■ Defendant alleges as his 25th through 27th points of error that Plaintiffs' expert witness testified that his opinion, in part, was based on conversations with others and, therefore, hearsay. An opinion partially formulated on the basis of conversations with others is not necessarily inadmissible, and admission of such is within the discretion of the trial Court. Bryant v. Trinity Universal Insurance Company et al., Tex.Civ.App., 411 S.W.2d 945 (Ref. n. r. e.).

There is a considerable divergence of authority as to the admissibility of an expert's opinion where a portion of the opinion is based on conversations with others or on hearsay. The rule is to some extent criticized particularly in the formation of medical opinions since it is in this area that the problem most frequently arises. McCormick and Ray, Vol. 2, Sec. 1404, pages 242–244. In reading the testimony of Plaintiffs' expert witness, it is apparent that a question presents itself as to the witness's ability to express an expert opinion as to wire drive failure when evaluating the basis of his opinion on the criteria for experts expressed in Mallow et al. v. State, Tex.Civ.App., 356 S.W.2d 705 (Ref. n. r. e.) and Urquhart v. Barnes, et al., supra. The conclusions of the experts for both parties are compatible, one selecting wire drive failure and the other selecting pilot error as the cause of the accident. Both experts agree as to the other possibility.

We find no abuse of discretion and overrule Defendant's points of error 25 through 27.

■ By his 31st point of error, Defendant contends that a motion picture

film shown to the jury in order to better illustrate the technical operation of certain helicopter controls in response to signals from the control stick was not made under substantially the same conditions as those existing at the time of the accident. The record reflects that the Court and counsel viewed the film before it was admitted in evidence, and shown to the jury. Although all parts of the control system were not used, the film was offered for a limited purpose of aiding the jury in their understanding of the servo movements in response to the control stick, all of which was explained to the Court before admission into evidence and viewing by the jury. We hold the film was properly admitted. Howell et ux. v. Missouri-Kansas-Texas Railroad Company, Tex.Civ.App., 380 S. W.2d 842 (Ref. n. r. e.); Houston, E. & W. T. Ry. Co. v. Sherman et al., Tex. Com.App., 42 S.W.2d 241; Panhandle & S. F. Ry. Co. et al. v. Haywood, Tex.Civ. App., 227 S.W. 347 (Ref.). Defendant's 31st point of error is overruled.

■ In points of error numbered 40 through 43, Defendant attacks the trial Court's exclusion of evidence of the Plaintiff's remarriage. Prior to the trial, a Motion in Limine was filed by the Plaintiffs to prevent any mention of Plaintiff's having remarried. This motion was granted by the Court. Defendant, by Bill of Exception, interrogated the Plaintiff. She candidly admitted that prior to the trial, she went to the District Court in the County of her residence, and had her name changed from her new married name of McClurg to her former married name of Anderson. She further testified that after this lawsuit is over, she intended to have her name legally changed again to the same name as her present husband, McClurg. Both the Court where her name was changed as well as the Court where this suit was tried were apprised of the fact that such was done for the purpose of benefiting Plaintiff and her minor children in this lawsuit. The basis for Defendant's assignments of error are to the effect that such constitutes a concealment and resulting misrepresentation to the jury as to her marital status and allows a double recovery for Plaintiff for damages and services which were replaced and restored by her subsequent marriage.

At first glance, such procedure appears violative of ethical standards and contrary to an innate sense of fair play. Yet, this Court, in determining the correctness of the trial procedure, must apply the applicable law. Texas has long followed the majority rule holding that the remarriage of the surviving spouse should not affect the damages recoverable for wrongful death. The general basis of such rule is summarized in 87 A.L.R.2d 252, p. 253, for the reason that:

"(1) the cause of action arises at the time of the decedent's death and the damages are determinable as of the same time; and,

"(2) the rule providing for mitigation of damages on account of the surviving spouse's remarriage is highly speculative, because it involves a comparison of the prospective earnings, services, and contributions of the deceased spouse with those of the new spouse."

The rule was first applied in Gulf, C. & S. F. Ry. Co. v. Younger, 90 Tex. 387, 38 S. W. 1121 (Tex.1897). It has been consistently followed. See Gulf, C. & S. F. Ry. Co. v. Moser, et al., Tex.Civ.App., 277 S. W. 722 (4 S.W.2d 1118), 275 U.S. 133, 48 S.Ct. 49, 72 L.Ed. 200; Texas Electric Ry. v. Stewart et al., Tex.Civ.App., 217 S.W. 1081 (writ ref.); J. A. Robinson Sons, Inc. et al. v. Ellis et al., Tex.Civ.App., 412 S. W.2d 728 (Ref. n. r. e.); City of Brady, Texas v. Finklea, 400 F.2d 352 (5th Cir. 1968).

Article 5928, Vernon's Ann.Tex.Civ.St. provides for change of name if it is for the interest or benefit of the applicant. In a similar situation, it was held not an abuse of discretion to deny such application. See Appeal of Evetts et vir, Tex.

Civ.App., 392 S.W.2d 781 (writ ref.). The Court in that opinion, however, was careful to point out that such holding should not be construed to hold that it would be error to permit the change of name.

Here, we are concerned only with the ruling of the trial Court in granting Plaintiff's Motion in Limine. We must conclude that withholding from the jury, evidence that is clearly inadmissible in mitigation of damages does not constitute error. We therefore overrule points of error 40 to 43.

By points of error numbered 44 through 46, Defendant argues that testimony in regard to the life expectancy of the deceased was inadmissible, as the deceased's occupation as a helicopter pilot with the possibility of duty in Viet Nam, lowered his life expectancy and such calculation was not sufficiently taken into account by Plaintiffs' witness. The witness used a standard mortality table as the basis of his calculations, and deceased's hazardous occupation factor as a helicopter pilot was considered; which factor resulted in a life expectancy figure five years lower than the average. It is well settled that standard mortality tables are admissible even when the deceased was engaged in an extra-hazardous occupation, and regardless of his health. Galveston, H. & S. A. Ry. Co. v. Johnson et al., 24 Tex.Civ.App. 180, 58 S.W. 622 (writ ref.); International & G. N. R. Co. v. Brandon, 37 Tex.Civ.App. 371, 84 S.W. 272 (writ ref.); 23 Tex.Jur. 2d, Sec. 323, pages 465–468.

The purpose of the introduction of mortality tables is to furnish a basis for the jury's consideration in estimating damages. It is not intended as any conclusive proof of life expectancy. If there be error in the witness's computation of a lesser number of years, we consider such harmless error since the greater number of years could be properly introduced.

In points of error numbered 47 through 52, Defendant contended that evidence of the deceased's future earning potential as to pay for U. S. Army officers with the rank of Lieutenant Colonel and Colonel was speculative and therefore inadmissible. Plaintiffs' witness testified that earnings of deceased would approximate $500,000.00. Testimony as to future earnings of a deceased is necessarily speculative to a certain extent. However, it is well settled that such testimony is admissible as an aid to the jury in determining lost earning capacity. Groendyke Transport Co., Inc., et al. v. Dye et ux., Tex.Civ.App., 259 S.W.2d 747, (Dis. by Agr.). Further, the element of inflation may be considered. J. A. Robinson Sons, Inc., et al. v. Ellis et al., Tex.Civ.App., 412 S.W.2d 728 (Ref. n. r. e.); Texas Consolidated Transportation Company v. Eubanks et al., Tex.Civ.App., 340 S.W.2d 830 (Ref. n. r. e.); Har-Pen Truck Lines, Inc., et al. v. Mills et al., 378 F.2d 705 (5th Cir. 1967). There is no error. Defendant's points of error 44 through 52 are overruled.

By points of error numbered 53 through 55, Defendant questions the Court's charge to the jury, contending the definitions of certain terms amounted to a general charge, and was therefore violative of Rule 277, Texas Rules of Civil Procedure, Rule 277 provides in part:

"In submitting special issues the court shall submit such explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, and in such instances the charge shall not be subject to the objection that it is a general charge."

We find the defined terms to fall within the category of explanatory instructions to the jury. Defendant cites no authority for its proposition other than Rule 277, T.R.C. P. There is no error, and points of error 53 through 55 are overruled.

By points of error numbered 74 through 82, Defendant urges that the damages awarded were improper and excessive.

The jury awarded $500,000.00 to Mrs. Anderson and $25,000.00 to each of the four minor children, being a total of $600,000.00. The Plaintiffs sued for a total of $481,255.00 so that the jury award exceeded the sum prayed for by $118,745.00. The trial Court entered judgment for Mrs. Anderson in the sum of $381,255.00, and in the sum of $25,000.00 for each minor child.

At the time of death, the ages of the minor children ranged fron one to ten years. The deceased was earning $13,500.00 per year as a Major.

■ Defendant complains that the pecuniary loss to the children should be limited to their minority. This point is not well taken in view of the holdings in Houston Gas & Fuel Co. v. Perry, et al., 127 Tex. 102, 91 S.W.2d 1052 (Tex.Com. App.1936, op. adopted); and Texas Consolidated Transportation Company v. Eubanks, et al., 340 S.W.2d 830, (Ref. n. r. e.); 17 Tex.Jur.2d 601, Damages, Sec. 51.

The other points of error regarding damages relate to excessiveness, whether or not passion and prejudice appears to influence the amount and whether the award is against the great weight and preponderance of the evidence.

■ First, as to the amount awarded to the minor children, we perceive no error on any of the points. Similar amounts under less favorable circumstances have been upheld. Donaghey v. Van Cleave, 456 S.W.2d 524 (Ref. n. r. e.).

■ In considering the amount awarded to Mrs. Anderson, the principal complaint is that it is excessive. The appellate Court, in its determination, should view the record in the light most favorable to the award. The Texas and Pacific Railway Company v. Salazar, Tex.Civ.App., 458 S.W.2d 116 (Ref. n. r. e.); J. A. Robinson Sons, Inc., et al. v. Ellis et al., Tex.Civ. App., 412 S.W.2d 728 (Ref. n. r. e.). At the time of Major Anderson's death, he was 33 years of age. Abundant evidence was introduced from which the jury could be guided in making an intelligent determination based on his earnings, life expectancy, and his ability and ambition for achievement, and his relationship with his wife and family.

■ Under the circumstances, it appears that the award is well supported by the evidence. We have carefully reviewed the entire record and do not find that the jury's verdict resulted from passion, prejudice, or improper motive, and Defendant points to no specific instance of harm. The question of damages is a matter entrusted to the jury's determination and should not be disturbed by the reviewing Court in the absence of some improper motive. Under the circumstances presented here, this Court should not substitute its verdict for that of the jury. Brown v. Poff, Tex.Civ.App., 387 S.W.2d 101 (Ref. n. r. e.); El Paso City Lines, Inc. v. Harris, Tex.Civ.App., 233 S.W.2d 620 (n. w. h.); Donaghey v. Van Cleave, supra. We therefore overrule these points.

Defendant's 83rd and final point of error alleging misconduct of Plaintiffs' counsel in final argument before the jury has been examined and is without merit and overruled.

All points of error have not been referred to, however, all have been considered and those not referred to present no reversible error and all are overruled. We affirm the judgment of the trial Court.

PRESLAR, Justice (dissenting).

I respectfully dissent. I would reverse and remand this case for another trial because of the granting of the Plaintiff's Motion in Limine regarding the remarriage of the Plaintiff. It is the writer's opinion that the act of the Court in granting Plaintiff's Motion in Limine was error because it prevented the Defendant from inquiring on voir dire of the jury panel if any of them knew "Mrs. McClurg" or "Agene McClurg," and secondly, it is not the law

of Texas that the mere fact of remarriage of the Plaintiff in a wrongful death action is inadmissible.

Prior to the time that the jury panel was assembled in the Courtroom, the Court ruled on the Plaintiff's Motion in Limine that it was:

" . . . . the ORDER of the Court that the defense in this case not refer to or allude to the fact of the Plaintiff's remarriage in any fashion whatever. * * * * * * Further it is the ORDER of the Court that no reference be made to the fact that Plaintiff in this case has had her name changed to Anderson."

In its order, the Court did give Defendant permission to inquire of the panel respecting any knowledge or acquaintanceship with the present husband of the Plaintiff, "without at the same time, of course, revealing the remarriage."

Plaintiff sued in the name of Agene Anderson, but during the pendency of the suit, she married Gene Roark McClurg, and some weeks prior to date of trial, she filed suit in Bryan, Texas, and had her name changed from McClurg to Anderson under the provisions of Art. 5928, V.A.T.C.S. This was followed by her Motion in Limine in the case before us. To preserve the point of error, the Defendant objected to the pleadings of Plaintiff using the name "Anderson," excepted to the Court's order on the Motion in Limine, and objected to that portion of the charge on damages for Mrs. Anderson. By bills of exception, Defendant elicited testimony from the Plaintiff that she married Mr. McClurg in November, 1969, here in El Paso (where this suit was pending), that they moved to Bryan the latter part of January; that they had become acquainted with a number of people there and she was known to them as Mrs. McClurg and still is at the time of trial; that she had her name changed by Court order "in order to keep you from calling me Mrs. McClurg or some other name other than Anderson

. . . .," and that her bank accounts and all of her records since marriage are in the name of McClurg; that when this lawsuit is over, she intends to go back to Court and have her name changed back to McClurg. Other testimony shows that the Plaintiff grew up in El Paso.

This case went to trial on June 15, 1970, in El Paso, before a jury panel of El Paso citizens, slightly less than six months after "Mrs. McClurg" moved from El Paso. By the Court's order, the Defendant was not permitted to inquire of the prospective jurors if they even knew Mrs. McClurg, much less have an opportunity to inquire into any relationship which would show bias or favor of the Plaintiffs. Art. 2134, Sec. 4, V.A.T.C.S., provides that any person who has a bias or prejudice in favor of or against either of the parties shall be disqualified to serve as a juror. Obviously, it is error to deprive a party the right to inquire as to such possible disqualification, and no such inquiry can be made if he is prohibited from identifying the party to the jurors in the first instance. Members of the panel, and jury, may have known "Mrs. McClurg" but defense counsel could only uncover that fact by violating the Court's order. Such was not necessary to preserve the error. This is an instance when the harmless error rule would not apply, for there is a violation of a fundamental right, the right of trial by jury. Heflin v. Wilson, Tex.Civ.App., 297 S.W.2d 864 (CCA 1956, writ refused); Tamburello et al. v. Welch, 392 S.W.2d 114 (Tex.1965). See also Texas Employers' Insurance Association v. McCaslin et vir., 159 Tex. 273, 317 S.W.2d 916 (1958).

The majority has upheld the trial Court in its ruling that the Defendant could not show the fact of the Plaintiff's remarriage. Permitting evidence of the simple fact of remarriage is a different matter from permitting evidence in mitigation of damages. I am not convinced that it is the law of Texas that evidence of remarriage by the surviving spouse is, per se, inadmissible. The decisions of our Courts stem from and

are based on the early case of Gulf, C. & S. F. Ry. Co. v. Younger, 90 Tex. 387, 38 S.W. 1121 (Tex.Sup.1897), in which the Supreme Court answered certified questions as to the admissibility of certain evidence. The nature of that evidence is the distinction that needs to be made. The suit was brought by J. A. Younger, in his own behalf, and that of his minor daughter, Della Younger, to recover damages for the death of his wife, the mother of Della. The Plaintiff offered evidence by a witness, one Fowler, as to the qualifications of Mrs. Younger as a wife and mother, and the Defendant sought on cross-examination to introduce evidence from Fowler and Plaintiff, Younger:

" . . . . that subsequent to the death of plaintiff's wife, Annie Younger, about the 7th day of June, 1894, plaintiff, Dr. J. A. Younger, married again, marrying one Miss Sheets; that the said Miss Sheets was, and long has been, a resident of the town of Ballinger; that she was a woman of culture and refinement, popular in the said town of Ballinger and Runnels County, had a great many friends, had lived there a great many years, was fit and capable to render to the plaintiff, and had since her marriage to him rendered to the plaintiff, every service that his deceased wife, Annie Younger, had rendered, and that she was qualified and fitted to rear the minor, Della Younger, as well as Mrs. Annie Younger, the deceased, would have done; that, if anything, her advantages and education had been superior to those of Mrs. Annie Younger; that she was able to, willing to, and in fact did, render to the said Della Younger, every service that Annie Younger could have rendered."

This evidence was rejected and brought forward in Defendant's bill of exceptions "A," and the question certified was:

"Was the evidence of Witnesses Fowler and Younger admissible, as set out in bill of exception No. A?"

The Supreme Court answered "No" to the question, and went on to discuss matters of damages and mitigation of damages, saying:

"If the plaintiff's wife was killed through the negligence of the defendant, he then lost the value of her life as a wife; and the fact that her place had been supplied by a subsequent marriage does not in any manner operate to mitigate the damages. . . . "

Thus, the question presented and the reasons for the answer given pertained to evidence offered in mitigation of damages. Subsequent cases are to the same effect, the latest being J. A. Robinson Sons, Inc., et al. v. Ellis, et al., 412 S.W.2d 728 (Tex. Civ.App.—Amarillo, 1967, Ref. n. r. e.) in which then Chief Justice Denton said:

"It is also settled that the remarriage of a surviving spouse or the possibility thereof, does not affect the *damages* recoverable for wrongful death of the deceased spouse. Gulf C. & S. F. Ry. Co. v. Younger, 90 Tex. 387, 38 S.W. 1121, Gulf C. & S. F. Ry. Co. v. Moser (Tex. Civ.App.) 277 S.W. 722. As a corollary to the above general rule, evidence of the surviving spouse's relationship is not admissible *where it is offered only for the purpose of mitigating damages.* Gulf C. & S. F. Ry. Co. v. Younger, (supra). Texas Electric R. Co. v. Stewart (Tex.Civ.App.) 217 S.W. 1018 (1081) (Writ Ref.). See 87 A.L.R.2d 252. Appellants recognize these general rules in that they seek to ascertain *facts beyond* the bare fact of remarriage; . . . . " (emphasis mine)

The holding in the cited Moser case was:

"There was no error in refusal of the court to instruct the jury to confine the period of Mrs. Moser's recovery *to that* of her widowhood."

Admissibility of evidence of remarriage was not involved. In the cited case of

Texas Electric R. Co. v. Stewart, evidence of remarriage was admitted:

"The court at the request of appellees charged the jury that they should not consider, in mitigation of the damages which they might allow to the appellee Mrs. Julia Stewart Carter, the fact of her remarriage. The giving of this charge is assigned as error. The record discloses that the fact of this appellee's remarriage was shown by evidence introduced by appellant, and the court having admitted such testimony, which was, we think, inadmissible for the purpose for which it was evidently offered, the court did not err in giving the charge correcting the error committed in admitting it."

It must be noted that the Court says inadmissible "for the purpose for which it was evidently offered," and we have no information from the case as to what those purposes were. More important, the point of error was not as to the admissibility of the evidence, so the statement was dictum. The holding was an approval of a charge in which evidence of remarriage had been allowed and an instruction given to disregard it in assessing damages. The Supreme Court gave the holding an outright "writ refused."

It is regretted that this opinion contains so many quotations, but it is thought necessary to do so to show exact holdings of the cases and dispel the notion that the law is well settled and absolute that evidence of the fact of remarriage is inadmissible. None of the decided cases discuss or speak of reasons for not admitting evidence of the fact of remarriage; all turn to a discussion of mitigation of damages, or they cite the leading case of Gulf, C. & S. F. Ry. Co. v. Younger (supra) as holding that evidence of remarriage is inadmissible. As we have seen, that was not the question certified to the Supreme Court in that case. Therefore, I cannot agree with the majority in ruling on Defendant's points of error numbered 40 and 41 which are directed at the Court's ruling on Plaintiff's Motion in Limine, which involved only the question of whether evidence of the simple fact of remarriage is admissible. The majority concludes such was not error because withholding from the jury, evidence that is clearly inadmissible cannot constitute error. As seen from the cases discussed, if this is the law, it has never been applied in the procedure used here. On the other hand, we have the holding in Texas Electric R. Co. v. Stewart (supra) where evidence of remarriage was allowed and the jury instructed not to consider such fact in mitigation. Mitigation of damages is the crux of the matter. This requires that no evidence be admitted on that issue. To place the fact of remarriage in the category of mitigation of damages, is to judicially hold that it does affect the award. Thus, it is made an element of damages, when it is not a proper one. Plaintiff in this case recognizes that truth, for she went to Court and procured s solemn judgment of a District Court that it was to her interest and benefit to change her name in this very suit. Such a procedure should not be allowed. It is one thing to say that the fact of remarriage is inadmissible, and another thing for the Court to become a party to an affirmative action to conceal. The trial of a lawsuit is a search for the truth. Citizens are forced to forego their daily pursuits and render service to make that determination by weighing the evidence and judging the credibility of the witnesses. The evidence may be nebulous, confusing, and contradictory, so the jury should have all the help which they can be given. Nothing should be kept from them in aid of their search for the truth without good reason. No good reason can be given for withholding the fact of marriage from them in a case of this nature, unless we assume they will then violate their oath and disregard the Court's instruction not to consider it in arriving at the damages. Public policy requires that jury service be not discouraged. Jurors who have been duped in a Court proceeding, or made to feel that they could not be trusted to do their duty, will not be

willing to serve again, or will serve with reservations of a credibility gap. One can imagine the feelings of this jury when they discovered, after ten days of working on the problems of this widow, that everyone in the Courtroom, except them, knew all the time that she was not really a widow, and the Plaintiff knew it better than anyone. As a matter of public policy, proceeding in this manner should not be the law.

The writer agrees with what was said by the Missouri, Kansas City Court of Appeals, in Glick v. Allstate Insurance Company, 435 S.W.2d 17 (1968):

"Clearly it would have been error for the court to have declared that knowledge of the widow's remarriage should be withheld from the jury in the trial of such actions. In our opinion such procedure would not be consistent with the high standards of integrity which the judicial process should maintain. The following quoted excerpt from Dubil v. Labate, 52 N.J. 255, 245 A.2d 177, decided by the Supreme Court of New Jersey, fully expresses our views: 'Our resolution of this issue does not dispose of this appeal. Though evidence of the plaintiff's remarriage is not relevant to the question of damages, we disagree with the trial court's attempt to suppress any mention of the remarriage. It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury. It seems to us that in the course of the trial of a wrongful death case, it would be virtually impossible to avoid mention of a remarriage without resorting to untruths. * * * Thus, we believe that—while evidence of the details of a remarriage, such as the earning of the new spouse or the birth of a child, is to be excluded—the mere fact of a plaintiff's remarriage should not be kept from the jury. The trial judge should instruct the jury, at the beginning of the case, that the plaintiff has remarried but that this fact is to play no role in their determination of the pecuniary advantage which would have resulted from a continuance of the life of the deceased. We have recognized in another contest the desirability of honestly presenting certain facts to a jury with instructions that it would be improper for them to consider these facts in their deliberations. State v. White, 27 N.J. 158, 178–179, 142 A.2d 65 (1958). In the present situation we have no doubt that the jury, after proper instructions by the court, will be capable of returning a verdict uninfluenced by the plaintiff's remarriage.' "

Procedural problems are eliminated by revealing the fact of marriage and instructing the jury not to consider such fact in arriving at damages. First, the restricted method of examining jurors on voir dire in order not to disclose remarriage is eliminated. Second, the hazard is eliminated that in the examination of witnesses, some planned or inadvertent statement may bring out the hidden fact and cause a mistrial, contempt trial, or trial under a cloud of possible error. Third, discussion in the jury room of the fact of remarriage is a hazard in a case of this nature, and could bring on a subsequent trial of the jury (a distasteful thing to be avoided whenever possible). Fourth, there is the possibility of disruption of the trial schedule if the "widow" is in an obvious state of pregnancy when the case is set or called for trial. (More litigation as to right to a continuance.) Fifth, there exists the danger that the jury will infer that the Plaintiff has remarried and will then consider her case without benefit of the Court's instruction not to consider such fact in arriving at her damages. This is a serious possibility where, as here, counsel

was permitted to ask on voir dire if the jurors knew a man by the name of her husband.

For the reasons stated, I would reverse and remand this case for another trial with instructions to the trial Court to reveal the fact of marriage, permit no evidence going to mitigation of damages, and instruct the jury not to consider the fact of remarriage in assessing damages.